MARGARET BAIRD, Appellant, v. HERBERT C. CONNELL,
JOSEPH SHUISKI, SHELDON BANK, AND LOWELL MORSE AND
WIFE, Appellees.

Husband and Wife: INTEREST OF EITHER IN OTHER'S PROPERTY.
1   Under Code, section 3154, it is only an interest which the
husband or wife may have in the lands of the other which
arises out of the marriage relation that is the subject of con-
tract between them, and not an interest of either in the lands
of the other derived through third persons.

Separation Agreements: RESCISSION: SALE TO HUSBAND OF WIFE'S
2   PROPERTY.   Although separation agreements between husband
and wife are generally invalid in so far as they relate to the
future, yet where one contains an independent agreement of

the husband to purchase the wife's separate property, and the same is subsequently executed, it is valid, though the contract in other respects may be void, and is not rescinded by resumption of the marital relations in the absence of a return of the money paid.

**Rescission of Separation Agreement: RECOVERY OF WIFE'S PROPERTY: ESTOPPEL.** Assuming that an agreement of separation between husband and wife is void because indivisible, and so far as executory has been rescinded, yet where the wife, pursuant to an agreement contained therein, has conveyed her separate property to her husband and received the price thereof, she is estopped from reclaiming the property until she has repaid the purchase money.

**Estoppel.** A void contract or decree may be the basis of an estoppel.

**Recovery of Property by Wife: FORMER ADJUDICATION.** In a suit by the wife for divorce and alimony, the petition alleged that at the time of the marriage she owned certain property which the defendant obtained from her by fraud. The answer set up an executed separation agreement and a division of their property and also that defendant had paid plaintiff a specified sum for her interest in certain lands which she conveyed. The reply admitted the allegations of the answer, but alleged a subsequent resumption of conjugal relations avoiding the effect of the separation agreement. *Held*, that the decree for alimony in the divorce proceeding was an adjudication of her property rights and a bar to an action to recover the land conveyed.

*Appeal from Sioux District Court.*—HON. GEO. W. WAKEFIELD, Judge.

THURSDAY, OCTOBER, 15, 1903.

SUIT in equity to set aside a conveyance, for redemption of certain lands, and to quiet plaintiff's title thereto. Trial to the court. Decree for defendants, and plaintiff appeals.—*Affirmed.*

*I. S. Struble* and *A. K. Webb* for appellant.

*W. D. Boies* for appellees.

DEEMER, J.—The property in controversy was pur-
chased by plaintiff, who was the wife of S. B. Baird, in
the year 1889, from one H. C. Connell, who executed and
delivered to her a bond for a deed. There was a mortgage
on the property to one Ormsby for the sum of $1,000,
which plaintiff assumed and agreed to pay. The plaintiff
and her then husband took possession of the property, and
used and occupied the same until the year 1893, when
plaintiff removed therefrom, and went to live with her
daughter, with whom she lived until the year 1894, when
she moved to Story county, Iowa. The Ormsby mortgage
matured some time in the latter part of the year 1890, and
in the early part of that year plaintiff's husband made
arrangements with the Sheldon Bank to take up the mort-
gage, and as security therefor was to procure a deed from
Connell running directly to the bank. This was consum-
mated by the execution of a deed from Connell and wife to
the bank under date of November 24, 1890. Thereafter,
and on December 17, 1891, Baird and wife also executed a
quitclaim deed of the property to the bank. This the
plaintiff claims was also intended as security for
the amount of the advancement to Ormsby and a small
indebtedness of S. B. Baird. There is a dispute regard-
ing the character of this conveyance, and we shall have
more to say of it during the course of this opinion. Baird
and his wife did not get along pleasantly, and on Decem-
ber 17th they agreed to separate, and entered into a writ-
ten contract of separation, the material parts of which are
as follows: "S. B. Baird and M. J. Baird, his wife, hav-
ing concluded and agreed to live separate and apart the
one from the other, make the following agreement in
relation to their property: M. J. Baird is to have all the
household furniture in the house occupied by them in
Boyden, Iowa, two bedsteads, mattresses, springs, and
pillows upon the same, two pairs of blankets, one double

lounge, one wash stand, two pitchers, two wash bowls, one extension table, all the dishes, two carpets, one piece of ten.yards of new carpet, two feather beds, one center table, one small rocking chair, six double chairs, half of the potatoes in the cellar, two cows, one red without horns, the other brindle cow with horns—and two pigs. The said S. B. Baird is to have the balance of the property and furniture, and this is to be regarded as a final settlement of their property rights and interest and neither is to have hereafter any interest whatsoever in the property of the. other; nor is either to be liable for the support or maintenance of the other, and they each agree and do relinquish all claim to the other's property. [Signed]    S. B. Baird.    M. J. Baird."

They did not long remain apart, but after a short time resumed their former relations, which continued in a fitful sort of a way until about the year 1893, when they again separated, which separation was final. In October of the year 1895 plaintiff obtained a divorce from her husband in the district court of Story county, Iowa, and in that proceeding was awarded alimony in the sum of $600. In the latter part of the year 1893 S. B. Baird began negotiations with defendant Morse to sell or trade him the property in dispute, which finally culminated in a contract of exchange, and the execution of a special warranty deed by the Sheldon Bank to Morse under date of January 1, 1894. Before bringing her suit for divorce in Story county, plaintiff commenced this action, which is to set aside the deed from the bank to Morse, to redeem the property from the bank's claim, for an accounting of the rents and profits, and to quiet plaintiff's title in and to the property. The defendant Connell filed a disclaimer, and is consequently out of the case. The defendant Sheldon Bank does not seem to have been more than a nominal party for the reason, no doubt, that it has received its money, and is indifferent as to the result of the controversy. The de-

fendants Morse answered the petition, setting forth many defenses, the more important of which were that they purchased the property for a valuable consideration from the holder of the legal title, without any knowledge or notice of the plaintiff's claim; second, that plaintiff parted with all her interest in the property at the time of her first separation from her husband; third, that plaintiff's claim to the property was adjudicated in the divorce proceedings in the Story county district court; and, fourth, an estoppel growing out of plaintiff's conduct with reference to the property. We shall notice these defenses as we proceed.

Having joined with her husband in the conveyance of the property to the bank, it will be observed that on the face of the records plaintiff has no standing in court. Defendants Morse have a clear paper title running from the government through certain mesne conveyances to Connell, from Connell to the bank, and from the bank to Morse. The bond for a deed has been performed by these conveyances, and whatever interest Mrs. Baird had in the property was ostensibly transferred to the bank by the quitclaim deed from Baird and wife. But it is conceded that these conveyances to the bank, except the one from Baird and wife, were for security only, and should, therefore, be treated, so far as this litigation is concerned, as mortgages. But, as plaintiff joined with her husband in the conveyance to the bank, she must show that this also was intended as security, else her case must fail. This presents one of the controlling questions in the case, and, if decided adversely to plaintiff, will end her case.

It will be observed that this deed was made on the same day as the separation agreement, from which we have quoted. That agreement does not in express terms refer to the property in dispute, but the evidence leaves no doubt as to the character of the transaction. Plaintiff herself testified as follows: "Baird and I had separated, and had entered into a written contract of separation about

December 17, 1891. Exhibit five is that contract, and that is my signature. On that same day Baird and I had an oral agreement as to what he should pay me for my interest in the property in controversy under the terms of our separation agreement. We had a talk a few days before December 17, 1891, and we went to Sheldon December 17th, to settle up the matter. He made a proposition that I could take one thousand ($1,000.00) dollars or the property. That was in view of our separation, and that agreement was carried out at Sheldon December 17, 1891. He paid me eleven hundred ($1,100.00) dollars for my interest in the property." This is fully corroborated by the representative of the bank, who testified: "She accepted from S. B. Baird in the sum of eleven hundred ($1,100.00) dollars. At the time of the payment of the eleven hundred ($1,100) dollars to Mrs. Baird by Mr. Baird, there was a deed given to them by Sheldon Bank covering the property in controversy. We were to hold it as security for the eleven hundred seventy-four dollars twenty-five cents ($1,174.25) which was to be paid by Baird, and after that was paid we were to deed it to any party designated by him. The reason this quitclaim deed was executed was, I thought we wouldn't have first-class title unless we had a deed direct from Mrs. Baird; therefore I demanded a quitclaim deed from her to clear the title. I took this deed with the understanding on my part that Mrs. Baird was relinquishing all her right and title to the land in controversy by reason of the payment of the eleven hundred ($1,100) dollars to her by Mr. Baird. On this same day, December 17, 1891, I rented the premises other for one hundred twenty ($120) dollars, which she paid in cash. I gave Mr. Baird credit for the one hundred twenty ($120) dollars paid by her. I rented these premises to Mrs. Baird for the benefit of Mr. Baird, and he received the proceeds. Lowell Morse paid me the one thousand ($1,000.00) dollars due upon the Ormsby mortgage. I

deeded the premises to Lowell Morse at Mr. Baird's instance. I think I never had any talk with Mrs. Baird about the ownership or the title from December 17, 1891, until I deeded this property to Lowell Morse, on January 1, 1894." This, then, was the real agreement between the parties, and it is manifestly conclusive of the case, unless it be for certain matters relied upon by plaintiff, which are said to abrogate and nullify the agreement.

It goes without saying that an agreement between husband and wife for future separation is contrary to public policy, and is therefore void; and it is also true 1. HUSBAND and that, when property is owned by husband or wife: interest of either in wife, the other has no interest therein which others property. can be the subject of contract between them. Code, section 3154. But it is just as true that this section relates to the interest which the husband or wife has in the lands of the other which arises out of or is created by the marriage relation. It has no application to any property interest which the husband or wife may have in the land of the other based upon contracts with third persons, or derived from sources other than the marriage relation. *Baxter v. Hecht*, 98 Iowa, 531. Indeed, section 3157 of the Code expressly provides that a conveyance, transfer, or lien executed by either husband or wife to or in favor of the other shall be valid to the same extent as between other persons.

Separation agreements, which are generally regarded invalid in so far as they relate to the future, have often been recognized and enforced in so far as they relate to 2. SEPARATION maintenance or other collateral engagements. agreements: rescission sale *McKee v. Reynolds*, 26 Iowa, 578; *Robertson* to husband of wife's property. *v. Robertson*, 25 Iowa, 350; *Carson v. Murray*, 3 Paige, 483; *Luttrell v. Boggs*, 168 Ill. 361 (48 N. E. Rep. 171); *Walker v. Beal*, 9 Wall. 743, 19 L. Ed. 814. There is no doubt that parts of this contract are invalid because they relate to the interest that each had

in the property of the other, and perhaps for the reason
that by the terms thereof neither was to be liable for the
support of the other.   But there is no doubt that, in so
far as it involves a purchase by the husband of the wife's
separate property, it was valid unless so involved with
the other considerations as to invalidate the whole; or be-
cause of the fact that the agreement was rescinded when
the parties resumed the marital relation.   There is no
doubt that an agreement of separation will be considered
as rescinded if the parties afterward cohabit or live to
gether as husband and wife.   And in such cases all the
provisions of the agreement will cease to operate, and the
parties will be restored to their marital rights to the same
extent as if no separation had ever taken place.   *Randall
v. Randall*, 37 Mich. 563.   But this rule does not go to the
extent claimed by counsel for plaintiff.   While the agree-
ment is, no doubt, treated as rescinded in so far as the
consideration therefor consists in the agreement to live
apart, there may be other conditions, based on independ-
ent considerations, which are not annulled by the resump-
tion of conjugal relations.   Here plaintiff had the option
to take the property in controversy as her own or to take
$1,100 for her interest therein.   She accepted the latter
proposition, and received the $1,100.   Surely the resump-
tion of the marriage relation did not operate to rescind
this part of the agreement.   It had been executed to this
extent, and it seems to us there could be no rescission
without a return of the money.

But assuming that the contract was and is void be-
cause indivisible in character, and that, so far as executory,
it was rescinded, we are nevertheless constrained to hold
that in equity plaintiff is estopped from re-
claiming the property until she has returned
the $1,100 which she says she received
from her husband therefor.   Plaintiff says,
however, that she returned the consideration to her

3.  RESCISSION of
separation
agreement:
recovery of
wife's prop-
erty: estoppel.

husband before bringing this suit. The record does
not support this contention. After receiving the money,
she used $100 thereof and loaned $1000, received payments
of interest and principal on the loan, and finally brought
suit in her own name for the balance due, and obtained
judgment, and thereafter assigned this judgment to her
brother. This does not look much like a return of the
money. She further claims that the $1,100 paid her by
her husband was in fact her own, having been derived by
her husband from property theretofore owned by her.
But this contention is not sustained by the evidence. The
money in truth belonged to the husband, and the parties
so treated it at the time the separation agreement was
entered into. That was a full settlement of their property
interests, and there is no claim of any mistake or fraud at
that time. Indeed, plaintiff's claim to the money is based
largely on the fact that it was the proceeds of certain
lands which had been deeded to her by her husband to
cheat and defraud his creditors. Although such a convey-
ance is no doubt good as between the parties, the law does
not look with a great deal of favor upon one who under-
takes to substantiate his claims by proof of fraud. The
husband, with the knowledge of the wife, received the
money for the land which had been deeded to her in fraud
of creditors, and both parties treated it as his when the
separation agreement was entered into. It hardly lies in
plaintiff's mouth to say that because of a fraud in which
she joined she should now be treated as the owner of the
money received by her in consideration for the land in
controversy, and in this manner secure not only the land,
but the purchase price as well.

But it is said that, if the contract were void, no estop-
pel can grow out of it, or of anything done under the con-
tract. There is no merit in this claim. It is now well
settled that a void contract, or even a void
4. ESTOPPEL. decree, may be the basis of an estoppel.

*Mohler v. Shank's Estate*, 93 Iowa, 273; *Arthur v. Israel*, 15 Colo. 147 (25 Pac. Rep. 81, 10 L. R. A. 693, 22 Am. St. Rep. 381); *Rawley v. Burris*, (Tenn. Ch. App.) 47 S. W. Rep. 176; *Cupp v. Campbell*, 103 Ind. 213 (2 N. E. Rep. 565). No matter, then, what view of the contract is to prevail, it is manifest that plaintiff is estopped from assailing her solemn deed, executed under the circumstances disclosed, until she returns or offers to return the consideration she admits she received therefor.

But there is another feature of the case which is equally conclusive. Plaintiff alleged in her petition that the deed from Connell to the bank was executed without 5. RECOVERY OF her consent, and was not in fact her deed. property by wife: former She also claimed that the conveyance to the adjudication. bank, in which she joined with her husband, was of no validity; that the transfer to Morse was fraudulent, collusive and void; that the property was hers, subject only to the payment of the amount advanced by the bank. This action was commenced before her action for divorce was begun, but she secured a decree in the divorce case before this action was tried. In that decree she was awarded the sum of $600 as alimony and $100 attorney's fees. That action was tried on the following allegations with reference to the property rights of the parties. In plaintiff's petition for divorce she alleged: "Plaintiff further states that she owned in her own name in cash and property, at the time she married said defendant, about $1,000, and that since her marriage with defendant she has held in her own name, as the proceeds of said money and labor, property to the value of $5,000 and over; and that said defendant, by fraud and false promises, and threats of personal violence, has obtained possession and control of said property, and procured title thereto in his own name, or in the name of some other person, and has either squandered the same, or caused the same to be transferred to other persons for the purpose of placing the

same beyond the reach of plaintiff, and to bring plaintiff to want; and that by threats of personal violence to plaintiff forced her to leave her own home, and at the same time telling her she had no right there, and that he did not intend to live with her any more, and that, if he could not get rid of her in one way, he would in another way." She asked judgment for alimony, and for such other and further relief as might be adjudged equitable. This was denied by defendant husband, and he also pleaded as follows in his answer: "Par. 2. Defendant, further answering, states that plaintiff and defendant did, on the 17th day of December, 1891, make between themselves a legal separation in writing, and divided their property, and each received the said property agreed upon; and defendant also paid to plaintiff as a part of said separation the sum of $1,000, and plaintiff retained and still retains all the property so received by her; and by reason of such separation and agreement plaintiff has no further claim for any property from defendant. A copy of said agreement is hereto attached, marked 'Exhibit A,' and made a part hereof." To this plaintiff replied as follows: "Admits that part of paragraph two in defendant's answer that relates to an agreement of separation and division of property, and the Exhibit A thereto, but avers the fact to be that subsequent to said agreement of separation and division of property said defendant returned to the home of said plaintiff, and by means of pretended repentance for his cruel and inhuman treatment of said plaintiff, and a pretended regard for her as a wife, and solemn promise to her that he would mend his ways and treat her as a husband should a wife, and assist in providing for her and family, said plaintiff permitted said defendant to return to her home with the express agreement and understanding that said agreement of separation and division of property should be null and void and count for naught; and upon said promise and agreements of said defendant said de-

fendant was permitted to return into the home of said plaintiff, and the relation of husband and wife was resumed by plaintiff and defendant, which relation existed and continued up to the time set forth in paragraph sixth of plaintiff's petition; that said promises of amendment and kind treatment by which plaintiff permitted defendant to return to her home and resume the relations of husband and wife were totally disregarded by defendant shortly after his return, and, instead of becoming more kind and loving in his treatment of plaintiff, he became more abusive and brutal in his treatment of plaintiff, until plaintiff, becoming afraid that defendant would put his threats into execution, fled from her home, as stated in her petition." From this it will be noticed that most of the matters in issue in this case were in dispute in that, and that the validity of the agreement of separation and division of property was squarely involved. True, plaintiff did not attack it on all the grounds that she does here, but she challenged the validity thereof, and obtained her award of alimony on these issues. Was this such an adjudication as bars plaintiff of relief in this case? Suggestion is made in argument that, as this suit was first commencd, the decree in the divorce case cannot constitute an adjudication. But this is not sound. It is the decree which constitutes the adjudication, and not the commencement of the action.

Perhaps the plea of another action pending might have been good in the divorce case, but that was not interposed. So the only question here is the effect of the prior decree. It must be remembered that, while the property in controversy at one time equitably belonged to the wife, she at no time held the legal or record title thereto. That was either in Connell, the Sheldon Bank, or defendant Morse. She now claims, just as she did in the divorce case, that her husband was attempting to deprive her thereof.

and to defraud.  Alimony is not awarded in this state, or generally in this country, according to the ecclesiastical practice, whereby the amount of the husband's income is ascertained, and a portion thereof awarded his wife for maintenance.  Under our practice property rights of each are ascertained, and final distribution is made of the property in order that the parties may forever remain independent of each other.  *Calame v. Calame*, 24 N. J. Eq. 440.  In making the allowance the court must estimate the property of both parties, and adjudicate the claims that each has against the other.  Having the parties before it, the court will award complete relief.  Pomeroy, Equity Jurisprudence, section 231.  This question is set at rest for this state in *Patton v. Loughridge*, 49 Iowa, 218, wherein it is expressly held that a claim of the husband for property of which he has been defrauded by his wife will be presumed to have been adjudicated in an action by the wife for divorce, in which a decree allowing alimony was granted, and he cannot afterwards maintain an action on the claim against a party by whose alleged instrumentality the fraud was affected.  This case is directly in point, and, as we think, controlling on this issue.

We are not to be understood as holding that the separate property rights of husband and wife are necessarily adjudicated in every case where alimony is awarded. What we do hold is that under the facts of this particular case the very matters in issue between the parties were involved, or might have been raised, in the divorce case, and that the decree for alimony in that case, under the issues there presented, is conclusive here.  The authorities are practically harmonious on this proposition.  *Tatro v. Tatro*, 18 Neb. 395 (25 N. W. Rep. 571, 53 Am. Rep. 820); *Behrley v. Behrley*, 93 Ind. 255; *Meldrum v. Meldrum*, 15 Colo. Sup. 478 (24 Pac. Rep. 1088, 11 L. R. A. 65); *Roe v. Roe*, 52 Kan. 724 (35 Pac. Rep. 808, 39 Am. St. Rep. 367).  See, also, Nelson on Divorce and Separa-

tion, section 903; *Glaze v. Bank*, 116 Ind. Sup. 492 (18 N. E. Rep. 450); *Rosholt v. Mehus*, 3 N. D. 513 (57 N. W. Rep. 783, 23 L. R. A. 239).

Something is said about the property in controversy being the plaintiff's homestead, and that her homestead rights have never been forfeited. The ready answer to this is that she voluntarily abandoned the homestead long before she commenced either suit. At the time the decree of divorce was rendered, plaintiff held neither the legal title nor any homestead rights in the property. But she says she abandoned it because of the abuse of her husband. This is not true. She voluntarily left the property, and acquired a residence in another county. It would not be profitable to consider the testimony with reference to the relations which existed between plaintiff and her husband prior to the decree of divorce. They were far from harmonious, and it is no doubt well for the good of society that they were divorced. It is enough to say in this connection that, whatever the husband's fault, the wife was not blameless. That the parties remained together as long as they did is not the only unusual thing in the case.

Many other matters are discussed by counsel, but, as the ones we have considered seem to be controlling, we do not stop to consider them.

The decree is mainifestly correct, and it is AFFIRMED.