HAGERTY *v.* UNION GUARDIAN TRUST CO.

1. HUSBAND AND WIFE—SEPARATION AGREEMENT—EFFECT OF REC-
   ONCILIATION AND RESUMPTION OF COHABITATION.
   Separation agreement between husband and wife, which listed all property owned by both of them and provided for equal division thereof, is something more than separation agreement providing for support and maintenance of wife, and therefore it was not avoided by mere reconciliation and resumption of cohabitation.

As to effect of reconciliation on separation agreement or decree, see annotation in 43 L. R. A. (N. S.) 1219; 40 A. L. R. 1227.

2. SAME—AGREEMENT TO RESCIND SEPARATION AGREEMENT—BURDEN
OF PROOF.

In suit by widow to have separation agreement by which their
property was equally divided between them set aside and to be
adjudged entitled to share in deceased husband's estate, bur-
den of proof resting upon plaintiff to establish agreement
between them that their reconciliation and resumption of
cohabitation should have effect of rescinding separation agree-
ment, *held,* not sustained on record.

Appeal from Macomb; Spier (James E.), J. Sub-
mitted January 28, 1932. (Docket No. 205, Calendar
No. 36,295.) Decided April 4, 1932.

Bill by Agnes M. Hagerty against Union Guard-
ian Trust Company, a Michigan corporation, execu-
tor of the estate of Daniel J. Hagerty, deceased, and
others to set aside a separation agreement and to be
adjudged entitled to share in his property. Decree
for defendants. Plaintiff appeals. Affirmed.

*John W. Babcock,* for plaintiff.

*Glenn M. Coulter,* for defendant Union Guardian
Trust Company.

*Donnelly, Donnelly & Munro (P. J. M. Hally,* of
counsel), for defendants McCourt, Keliher, and
Hagerty.

SHARPE, J. On December 2, 1925, the plaintiff and
her then husband, Daniel J. Hagerty, entered into a
written agreement which, after reciting that they
were married on or about October 1, 1902, and were
then husband and wife, and after listing the prop-
erty owned by them, both real and personal, and
whether owned jointly or individually, including the
present value of life insurance policies on each of
their lives and cash on hand in the sum of $11,555.90,

provided specifically for a division thereof between them, enumerating that which each should receive, the cash on hand to be equally divided between them.

It was further stated therein that the property listed constituted all of the property, except personal effects, owned by them or either of them, or owned jointly, and "that the division as made above shall constitute and be a full release, as hereinafter provided." This was followed by an agreement for separation and a provision that the share of the property received by the wife was in full settlement and release by her "of all claims and demands of every kind, name or nature" against her husband, including homestead and alimony or other rights, and an undertaking on her part to execute releases of her dower or other rights in lands owned or subsequently acquired by him.

The husband, in like manner, released his wife from "all claims and demands of every kind, name and nature, which he has or had on account of the marriage of the said parties." Each of them therein acknowledged receipt of all moneys due them under the agreement and of all deeds, assignments, and releases executed pursuant thereto.

This agreement was duly acknowledged before a notary public, who certified that the parties appeared before her separate and apart from each other, and expressed their understanding of the agreement and that it was not executed as the result of collusion or because of any "duress, coercion or undue influence, overreaching, or unfair practice brought or exercised by any party whatsoever."

In July, 1929, the parties agreed to discontinue living separate and apart, and became reconciled to each other and resumed cohabitation. On February 20, 1928, Mr. Hagerty duly executed a last will

and testament, in which he bequeathed certain money to the Union Trust Company as trustee for the benefit of a niece, Katherine McCourt, one of the defendants, and made a number of other devises and bequests, with a residuary provision in favor of six nieces and nephews. The trust company was named as executor. He died on November 9, 1929. His will was duly admitted to probate, and the trust company qualified as executor thereof.

On May 22, 1930, the widow filed the bill of complaint herein, naming the executor and all the legatees therein parties defendant. In it she set forth the separation agreement, and alleged that it was rescinded, revoked, and canceled, and prayed that she be adjudged to have such interest in the property owned by him at his death as she would have been entitled to had not such agreement been made.

The defendants filed answers. The issue presented was whether the separation agreement had been canceled and rescinded. The trial court was of the opinion that, in view of the nature of the agreement, the mere fact of reconciliation and resumption of cohabitation did not, in itself, have such an effect, and that the proof offered, even if that objected to as incompetent be considered, did not establish an intent to do so, and entered a decree dismissing the bill, from which the plaintiff has appealed.

Counsel for the plaintiff insists that under our holding in *Knapp* v. *Knapp,* 95 Mich. 474, and in *Wright* v. *Wright,* 162 Mich. 445, "positive proof of complete cohabitation is, in the absence of proof to the contrary, in and of itself proof of intention to renounce the agreement," while counsel for the defendants, citing *Miller* v. *Miller,* 227 Mich. 684; *Edwardson* v. *Edwardson,* 229 Mich. 66; *Wilson* v. *Wilson,* 254 Mich. 504, and other authorities, contend otherwise.

In our opinion, the nature of the contract entered into is decisive of this question. If the agreement be one providing for living separately, and for the support and maintenance of the wife, reconciliation and resumption of cohabitation will, as a general rule, have the effect of avoiding it. But the agreement here entered into, and which we have set forth at considerable length, goes far beyond the terms of a mere separation agreement. There was in it a listing of all the property owned by both of them or in which either had an interest, and an equal division made thereof satisfactory to both parties. Conveyances were at that time made by which title passed to each of them in conformity with the division as agreed upon. The money they then had was equally divided between them. This was not the kind of a separation agreement involved in the decisions on which plaintiff's counsel relies. Had they desired to terminate it after reconciliation, and to place the titles and interests of the parties in the property as they were at the time the agreement was entered into, conveyances and transfers would have been necessary to accomplish this result. The rule of law is, we think, well settled that such an agreement will not be deemed to be avoided by the mere fact of reconciliation and resumption of cohabitation.

An annotation on ''Effect of reconciliation on separation agreement'' appears in 40 A. L. R. 1227 *et seq.* After stating the general rule as announced in *Knapp* v. *Knapp, supra,* that, where the husband and wife become reconciled and resume marital relations, the contract is avoided, the limitations on this rule are discussed at length, and, as before stated, the character of the agreement is deemed to be decisive of the question. This authority is so easy of access that we refrain from citing or quoting

from the cases there considered. The conclusion of the writer is thus stated on page 1233:

"If an agreement between husband and wife providing for their separation goes beyond the terms of a mere separation deed, and is in effect a good voluntary settlement by the husband on his wife, a subsequent reconciliation between the parties cannot affect the agreement so far as it constitutes a settlement, and hence the settlement must stand notwithstanding the reconciliation."

While not directly in point, the decisions in *Re Berner's Estate*, 217 Mich. 612, and in *Wilson* v. *Wilson, supra,* may be read with profit.

Plaintiff's counsel insists that, even if it be so held, an intent to rescind is disclosed by a preponderance of the evidence. The trial court, who heard and saw the witnesses, concluded otherwise. "Actions speak louder than words." This old and familiar adage may well be applied when determining a man's intent. That which he does, or does not do, may often be relied on as more convincing proof than what he may at times say concerning his inaction. If we consider all of the testimony offered in support of plaintiff's contention, it amounts to no more than apparently casual remarks on the part of the deceased that the status of his wife and himself after their reconciliation was as before the agreement was executed. Opposed to this we have the fact that he made no change in his will. It surely could but have occurred to him that, if the agreement was rescinded and he wished to make some provision for the objects of his bounty as provided for therein, a new one should be made by him. While it appears that he and his wife were informed by the attorneys whom they consulted before the agreement was prepared that reconciliation would

annul it, the nature of the agreement as executed was not then before them for consideration. It also appears that the deceased took counsel with a reputable attorney about the effect of a reconciliation, and stated to him "that he did not want the property settlement provided for in the separation agreement changed," and that later, when both the plaintiff and deceased called on him and he did not feel at liberty to act for them, he advised them "that if they intended to have a different disposition of the property other than set forth in the separation agreement that they should go to their attorneys and have the matter taken care of to avoid any possible difficulties later on."

In our opinion, the burden was on the plaintiff to establish the fact that there was a mutual understanding between her and the deceased, amounting in legal effect to a contract between them, that the agreement was to be rescinded by their reconciliation and resumption of cohabitation, and, after a careful consideration of the entire record, we find, as did the trial court, that this fact was not established.

It follows that the decree dismissing the bill of complaint is affirmed, with costs to appellees.

CLARK, C. J., and McDONALD, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.