**PRICE, ESTATE OF, In Re**

Ohio Probate Court, Summit Co

Decided Dec 27, 1934

Clay Dietrich, Akron, for exceptor.

Brouse, Englebeck, McDowell, May & Bierce, Akron, for the administrator.

## OPINION

By MAY, J.

In this case the questions presented to the court come on for hearing in two respects:

First: The inventory omitted to set off to Curtis M. Price, the relict, any property as exempt from administration. Instead, and in justification for the omission, the inventory refers to a postnuptial agreement. This reference is to a postnuptial agreement between Curtis M. Price and the decedent, Mary Price. Exceptions were, therefore, filed to the inventory, the purpose of which is to require the court to make the allowance, in view of the omission of the appraisers.

Second: Harry Price, as administrator of the estate of Mary Price, the decedent, has filed his petition setting up this same postnuptial agreement, and asking this court to adjudge the validity thereof and the rights of Curtis M. Price in and to the estate of the decedent, Mary Price, so that he may be fully protected in the administration of the estate, in respect to any rights on the part of Curtis M. Price in and to the estate, itself.

Both of the above proceedings involved one and the same point, and it was agreed to try both in a single hearing, which has been done.

It is admitted that on July 14, 1915, the parties did enter into a postnuptial agreement. This was followed by an immediate separation. There was a division of both real and personal property. The decedent was to have the care, custody and control of the named minor children. She bound herself likewise, to support and maintain the children. Without reciting the complete language of the agreement, each of the parties released unto the other all further claim in and to the property divided, as well as any property acquired in the future, including all statutory claims, and which language is broad enough to include the rights asserted by Curtis M. Price, as the relict of Mary Price.

In the enactment of the recent Probate Code, §10512-3 GC, it is provided that such an agreement "shall be deemed valid unless action to set it aside is begun within six months after the appointment of the executor or administrator of the estate of such decedent, or unless within such period of time the validity of such agreement is otherwise attacked."

It is, therefore, clear that the postnuptial agreement being now brought into question and being attacked by the husband its validity must be determined by this court.

It is admitted by the parties that from the time of the execution of the separation agreement in 1915, they did live separate

and apart until about January 15, 1934. The decedent lived in Summit County, and Curtis M. Price, the claimant in Portage County. Curtis M. Price claims that a reconciliation was then effected, followed by re-cohabitation, and that by the resuming of the marital relation between him and the decedent, Mary Price, the effect was to revoke the postnuptial agreement.

The court finds that the evidence adduced is wholly insufficient to establish a reconciliation and to establish co-habitation. The evidence adduced is as consistent with the theory of non-reconciliation and non-cohabitation, as it is with the theory of reconciliation and re-cohabitation. The provisions of this contract expressly bar any right on the part of Curtis M. Price, in and to the estate of the decedent. The burden of proof is, therefore, on him to show that contrary to the express provisions of his formal written agreement, he has such right.

The evidence shows that for a long period of time, prior to the death of the decedent, despite the existence of the postnuptial agreement and the separation of the parties, a friendly relation still existed between them, and that the wife frequently visited the husband. The evidence shows that the decedent, prior to January 15, 1934, maintained her own home in the city of Akron, which she had purchased and in which she had reared the children, who now oppose the claim of their father. She lived there alone. On or about the above mentioned date she went to the home of her husband as she had on previous occasions, he at the time living west of Ravenna in the adjoining county of Portage. The purpose in going there is not shown. When she arrived there she was ill and remained ill until the time of her death on or about March 25, 1934. There is no evidence in the record tending to show that the intent was other than to visit, when induced by illness she remained until the time of her death.

There is no evidence tending to show cohabitation, as this term is understood, between the two during this interim, and the illness, itself, would seem ordinarily to rebut this presumption of cohabitation.

The fact that the decedent was on friendly terms with her husband, and the fact that perhaps through illness she was induced to remain with her husband on this last occasion until her death transpired, is, in the opinion of the court, wholly insufficient to show a reconciliation and re-cohabitation, in view of the previous conduct of the parties and the previous visits of the decedent at the home of her husband.

There is no evidence tending to show that she intended to remain with her husband permanently, and there to assume the duties of a wife. During the interval between January 15, 1934 and her death, she still had her home in the city of Akron. This home had been occupied by her for many years, and all of her household furniture and clothing remained there.

Under the circumstances surrounding the parties, the court, therefore, concludes that there is not sufficient evidence shown, as would warrant the court in finding that these parties, by their conduct, had rescinded or abrogated their previous postnuptial agreement, the terms of which had been fully executed by both of the parties, and which had existed and had been observed by them for the period of nearly twenty years.

But assuming that the court should find that there was a reconciliation and re-cohabitation between the parties to this agreement, it does not follow that a rescission or abrogation of this postnuptial contract would result.

It is now clearly established that postnuptial agreements fall within one of two classes. First, those which provide merely for separation and for separate maintenance; and second, those which go further and divide and make a settlement of all of the property of the parties, and which amount to what has been designated as a property settlement between the parties, similar to a marriage settlement.

In the first category, the contract is ordinarily executory, and the consideration for the continued obligation of the parties thereunder, depending primarily upon the separation, the contract ceases where the parties thereto again resume marital status. In such case, the fact of reconciliation and re-cohabitation, in itself, terminates the postnuptial agreement. This rule is stated in the following language:

"5. Reconciliation of the parties and their living together as husband and wife subsequently to a mere separation make the inference of intention to renounce the agreement of separation inevitable."

In re Estate of Ray, 304 Pa. 421 (1931). A reading of this case will amply disclose the distinction.

In the second category, where the con-

tract goes beyond the terms of a mere separation, and contains therein a division of property of the parties, as a property settlement, the contract is ▉▉▉▉▉▉ ▉ ordinarily executed and it is not avoided by mere recon-ciliation and re-cohabitation. This rule is stated in the following language:

"1. An agreement between husband and wife upon their separation which, after listing all property owned by them jointly or individually, provided for a specific division thereof by conveyances between them, and that the share received by the wife should be in full settlement and release of all claims against her husband, is not avoided by the mere fact of reconciliation and resumption of cohabitation."

Hagerty v Trust Co., 258 Mich. 133 (1932). In respect to the distinction between the two classes, the Supreme Court of Kansas says as follows:
."It is frequently said that reconciliation and resumption of the marital relation will render a contract void. This is a loose and inaccurate statement of a supposed rule. Courts cannot make or unmake contracts but can only determine the effect of express or implied agreements made by those competent to act for themselves. Rescission or abrogation is as volitional as the act of contracting." Dennis v Perkins, 88 Kans. 428.

The distinction between the two situations was made in England as early as the year of 1882, where Lord Chief Justice Coleridge, in Negus v Forrester, 46 L. T. n.s. 675, after pointing out that a purely maintenance agreement is terminated by. re-cohabitation, said:

"I quite see the good sense of such reasoning. But that is confined to cases of separation deeds simpliciter, where the money covenanted to be paid is to be paid in consideration of cessation, and of course, therefore, only during cessation of cohabitation. But there is another class of case where the deed contains other and separate provisions,—a provision for an annuity for the life of the wife in some cases, a particular house given up to her in others; and where there are absolute provisions of that sort the deed is a perfectly valid deed and may be enforced by either party, notwithstanding re-cohabitation. We have to deal here with a deed that belongs to that second class."

And Lord Justice Brett added:
"Where the deed is made to depend on other matters than the continuance of separation, the liability under the deed continues whatever takes place between the husband and wife."·

In the earlier cases in the United States, it seems that the distinction was not observed. However, the recent cases, such as: In re Estate of Ray and Hagerty v Trust Company, fully notice and adopt the distinction, and a reading of these two cases will immediately point out the necessity for the recognition. Some few cases are pointed out in Ohio by counsel for claimant, which do not notice the distinction.

In Smith v Terry, 56 N. Y. Sup. 447, affirmed in 166 N. Y. 632 (1901), its former decision in 52 N. Y. Sup. 630 was reversed, in which earlier case it was held that reconciliation and re-cohabitation of husband and wife terminated the agreement. In the later decision, Mr. Justice Cullen used the following language:

"If the instrument executed between the parties were a mere agreement for separation, the decision of the trial court would be correct. But the instrument was much more; it was a conveyance of real estate on certain well defined and valid trusts. * * * But this principle does not apply to an executed agreement. While the indenture in this case recites as the object of conveyance the support of the wife, nevertheless it is a present conveyance which not only vested rights in the wife but also in the heirs of the grantor, in case the husband should predecease his wife. In fact this may be termed a separation settlement, and similar in its legal aspects to a. marriage settlement."

The distinction also was recognized by the late Judge Sullivan of the Cuyahoga County Court of Appeals in Leidy v Malcolm, reported in 32 O.L.R. 363, where he cites Dennis v Perkins, 88 Kans. 428 with approval, although perhaps unnecessary to a determination of the facts involved in the case then before the court.

The following cases also make the same distinction:
Baird v Connell, 121 Iowa 278 (1903); Allen v Allen, 108 Kans. 765 (1921); Bulke v Bulke, 173 Ala. 138 (1911).
An examination of the postnuptial contract here in question discloses that it was something more than a mere separation

agreement. It was in addi- tion, a property settlement. It falls within the second classification, hereinabove noted. Evidence merely showing reconciliation and re-co- habitation, does not rescind or abrogate an agreement of such a character. The contract here in question was formally ex- ecuted. It was signed, witnessed and ac- knowledged. It related to real estate, which the parties then owned, as well as to real estate which they might thereafter separ- ately acquire. It was a contract which was required to be in writing, relating as it did to real estate.

In the absence of evidence tending to show that the parties themselves expressly agreed and intended to abrogate or rescind this contract, it must stand, and the court cannot rescind it for them.

A court should not lightly conclude that such a contract should be set aside. Neither would there be much equity in doing so, under the facts developed here. The de- cedent took her share in the property of the parties at the time of the separation. She undertook to maintain and support their minor children. This she did without any contribution thereafter on the part of her husband, Curtis M. Price, the claimant here. After the separation, apparently by her industry, she acquired what property she has. The children whom she under- took to raise, now succeed to this property, and the asserted claim on the part of the husband is not only contrary to his express agreement, but in derogation of the chil- dren's right of inheritance from their mother, which was, under the contract be- tween these parties, to be her own separ- ate property, free from all right, title and interest in and to the same on the part of the husband.

There is, however, another consideration which the court should notice. After the death of Mary Price, under the circum- stances related, on June 27, 1934, there was an application filed and letters of admin- istration were issued to Curtis M. Price by the Probate Court of Portage County, Ohio, in which county, as above noted the hus- band was living, and where the decedent Mary Price, if there had been a reconcilia- tion and re-cohabitation, must likewise have resided. Thereafter, however, a peti- tion to remove him was filed by Marie L. O'Connell, one of the decedent's children. On this petition to remove, notice was served on Curtis M. Price. This matter was heard on October 2, 1934, at which time Curtis M. Price was present in court. The

journal entry on this hearing contains the following language:

"and at the conclusion of the evidence the said Curtis M. Price having filed his written application for his resignation as such administrator for the reason that the said decedent Mary A. Price, was, at the time of her death, a resident of Summit County, Ohio, and not of Portage County, Ohio which the court finds to be the fact from the evidence submitted, it is ordered and adjudged that the said resignation be accepted and it hereby is accepted and the said Curtis M. Price is ordered to file his account as such administrator within one month; it is further ordered and adjudged that the said Curtis M. Price be and here- by is removed as administrator of the es- tate of Mary A. Price, deceased; and for want of jurisdiction in the premises, no further appointment is to be made."

This was a judicial and final determina- tion of the fact that Mary A. Price was not a resident of Portage County, Ohio, since no ap- peal or error was prosecuted to this judgment. The court could not have thus found, if she was at the time cohabit- ing and living with her husband, who was a resident of Portage County, Ohio, and where her residence must likewise have been, had there been, in truth and fact, a reconciliation and re-cohabitation between these parties.

The court does not find that this ad- judicated fact is determinative of the entire issue, but it is conclusive on the question of the place of residence of Mary A. Price, at the time of her decease. The judgment of the Probate Court of Portage County is a determination of the fact that Mary Price was not a resident of Portage County, at the time of her death. Her place of resi- dence was somewhere. It could be only either in Portage or Summit County. This judicial determination of the place of resi- dence by both of the Probate Courts the one in revoking, and the other in subse- quently issuing letters of administration, precludes further inquiry into this fact, so far as it may enter into the question of evidence tending to show reconciliation and re-cohabitation.

The court accordingly finds that the ex- ceptions to the inventory must be overruled.

On the petition of Harry Price, as admin- istrator of Mary Price, deceased, a journal entry may be drawn, finding the postnup- tial agreement to be valid and still sub-

sisting, and decreeing, for the direction of the administrator, in the administration of the estate of Mary A. Price, deceased, that the said Curtis M. Price has no further or other interest therein.