FIELDS, APPELLEE, *v.*
FIELDS, APPELLANT.

(No. 10111—Decided
May 18, 1987.)

*Rion, Rion & Rion Co., L.P.A.,*
and *Matthew H. Wilson,* for appellee.
*Carl Anthony Cramer,* for appellant.

BROGAN, J. Appellant, Johnny Junior Fields, and appellee, Norma J. Fields, were divorced in Montgomery County on May 19, 1983. The decree authorized the appellee to reside in the parties' marital premises for ninety days subsequent to the divorce. Among other provisions, the appellant was ordered to pay a lump sum property settlement award of $150,000 to the appellee in three installments. The first installment of $50,000 was paid by the appellant shortly after the divorce; the other two installments were due in six-month intervals thereafter and remain partially unpaid.

The decree also provided that the parties were to remain the joint owners of an income-producing property and to share the net proceeds equally. On June 1, 1984, appellee filed a motion requesting the court to find the appellant in contempt for failing to comply with the payments ordered in the decree as well as the distribution of rental proceeds.

Although the appellant was initially held in contempt, that judgment was reversed by this court and remanded for a further hearing consistent with our opinion. On April 10, 1986, after an extensive hearing, the referee recommended that the trial court issue an order finding that the appellant was in arrears in payments under the decree totaling $80,392.94 as of June 1, 1984, and that appellant make payments on the arrearage in three equal installments. The referee also recommended that the trial court not find the appellant in contempt because his noncompliance with the decree was not willful. The referee also recommended that appellant's motion to dismiss be overruled.

In his report the referee found that the parties had resumed cohabitation at their former marital residence for approximately six months after their divorce, *i.e.,* from June 1983 until January 1984. The referee also found that the parties had opened a joint checking account and commingled certain individual funds therein. The referee also found that the parties purchased a certificate of deposit with these independent funds. The referee also noted that there was disputed testimony over the disposition of the monthly rent checks due from the tenants of the parties' rental property. The referee noted that the defendant sought credit for payments out of the lease checks, the joint account, and the certificate of deposit. The defendant also claimed the plaintiff took $40,000 to $50,000 cash from the trunk of his car. Plaintiff denied the allegation.

The defendant moved to dismiss the contempt action contending that since the parties had reconciled after the divorce, the executory provision of the divorce decree had been voided. Specifically, the defendant contended that the executory provisions were voided because the parties had lived together as husband and wife after the divorce.

The referee noted an absence of "the usual indicia showing a resumption of the marital relationship between the parties," *i.e.*, that there were no joint income tax filings and that the parties maintained separate health insurance benefits and depository accounts.

Concerning the merits of the plaintiff's motion for contempt, the court noted no funds paid by either party were earmarked as property settlement or lease division monies. The referee also noted that neither party complied with the terms and conditions of the decree mandating a joint account for deposit of the rent proceeds. The referee found that the defendant failed to preponderate on the issue of payments due under the decree. Both parties filed objections to the referee's report.

The trial court adopted the findings and recommendations in most respects. The trial court specifically rejected the defendant's claim that the executory provisions of the decree were voided by evidence of resumption of the marital relationship. The court found no evidence of a common-law marriage. The trial court pursuant to objection filed by the plaintiff awarded interest due upon the arrearage pursuant to R.C. 1343.03(A). The court also found that the defendant was in contempt for nonpayment of the arrearage because the court found an intentional or purposeful violation of a court order is not a prerequisite to a contempt finding pursuant to *Pugh* v. *Pugh* (1984), 15 Ohio St. 3d 136, 15 OBR 285, 472 N.E. 2d 1085. The court imposed a sentence of ten days' confinement and suspended it provided the defendant paid the arrearage in full by July 10, 1986. From that judgment defendant has appealed and has asserted four assignments of error.

In his first assignment of error, appellant contends that the trial court erred by overruling his motion to dismiss because the parties entered into a common-law marriage after their divorce and thus voided any further settlement agreement.

In *Nestor* v. *Nestor* (1984), 15 Ohio St. 3d 143, 145-146, 15 OBR 291, 292-293, 472 N.E. 2d 1091, 1094-1095, the Ohio Supreme Court in a *per curiam* opinion reiterated the essential elements to establish a common-law marriage:

"The necessary elements in order to establish a common law marriage were set forth by this court in *Umbenhower* [v. *Labus*], supra [(1912), 85 Ohio St. 238]. The syllabus provides as follows:

" 'An agreement of marriage *in praesenti* when made by parties competent to contract, accompanied and followed by cohabitation as husband and wife, they being so treated and reputed in the community and circle in which they move, establishes a valid marriage at common law * * *.'

"The fundamental requirement to establish the existence of a common law marriage is a meeting of the minds between the parties who enter into a mutual contract to presently take each other as man and wife. *The agreement to marry in praesenti is the essential element of a common law marriage. Its absence precludes the establishment of such a relationship even though the parties live together and openly engage in cohabitation. Although cohabitation and reputation are necessary elements of a common law marriage, this court has previously held that standing alone they do not constitute a common law marriage. In re Redman* (1939), 135 Ohio St. 554 [29 O.O. 143].

"The contract of marriage *in praesenti* may be proven either by way of direct evidence which establishes the agreement, or by way of proof of cohabitation, acts, declarations, and the conduct of the parties and their

recognized status in the community in which they reside. However, all of the essential elements to a common law marriage must be established by clear and convincing evidence. *Markley* v. *Hudson, supra* [(1944), 143 Ohio St. 163], at 169; *In re Redman, supra,* at 558.

"Where there is no direct proof in reference to the formation of the contract of marriage *in praesenti*, testimony regarding cohabitation and community reputation tends to raise an inference of the marriage. This inference is given more or less strength according to the circumstances of the particular case. The inference is generally strengthened with the lapse of time during which the parties are living together and cohabitating as man and wife.

"Where there is direct evidence concerning the formation of the contract of marriage *in praesenti* and a finding by the court, as here, that such a contract exists, the evidence of long-time cohabitation and reputation of living together as man and wife should be given even greater weight to further strengthen the inference of marriage."

Although Mrs. Fields admitted to living in the marital premises for approximately six months after the divorce with her former husband and sharing the same bedroom on occasion, she denied she was living with him as husband and wife. She also denied that she and appellant had ever agreed to become remarried. She denied "holding herself out" as being remarried to appellant.

Appellant responded to counsel's inquiries about the parties' marital status as follows:

"Q. When you two lived together after the divorce did you live together as man and wife?

"A. More so than we ever did in our life. We got along better and thought more of each other than we

did for the twenty-five years we were married.

"Q. Did you hold yourselves out to the community as man and wife?

"A. Yes, we did.

"Q. Did you sign things as Mr. & Mrs. Fields, for example?

"A. Yes, we did.

"Q. Did you consider yourself to be remarried for all practical purposes?

"A. Yes, I did. I felt like I was never divorced. * * *"

Although Mrs. Fields did not move out of the marital premises until January 1984, appellant admits that he and his former wife filed tax returns in April 1984 for the 1983 year separately. Also appellant admits he did not seek a divorce from his "common-law" marriage to his former spouse. There was a dearth of other testimony concerning reputation in the community as to the parties' marital status.

In short, we find that there is substantial, probative, and credible evidence to support the trial court's conclusion that appellant had not sustained his heavy burden to prove that a common-law marriage existed. The first assignment of error is overruled.

In his second assignment, appellant contends the trial court erred by not sustaining his motion to dismiss on the grounds that by cohabiting after, and in violation of, the divorce decree, the parties voided any executory provisions of the decree.

In support of his assignment, appellant cites this court's decision in *Lucas* v. *Lucas* (App. 1938), 26 Ohio Law Abs. 664. In *Lucas*, this court held that a post-nuptial agreement for separation and maintenance is executory only and may be revoked by reconciliation and resumption of the marital relationship, whereas a post-nuptial agreement that includes a division of property and a property settlement is ordinarily an executed agree-

ment which can not be revoked by reconciliation and resumption of the marital relationship alone, but can be revoked only by clear agreement and intention between the parties that it shall be revoked, citing with approval the case of *In re Estate of Price* (P.C. 1934), 22 Ohio Law Abs. 639, 1 O.O. 459.

In *Price,* the court opined:

"In the first category, the contract is ordinarily executory, and the consideration for the continued obligation of the parties thereunder, depending primarily upon the separation, the contract ceases where the parties thereto again resume marital status. In such case, the fact of reconciliation and re-cohabitation, in itself, terminates the post-nuptial agreement. * * *" *Id.* at 641, 1 O.O. at 461-462.

The court in *Price* also indicated approval of the following language:

" 'An agreement between husband and wife upon their separation which, after listing all property owned by them jointly or individually, provided for a specific division thereof by conveyances between them, and that the share received by the wife should be in full settlement and release of all claims against her husband, is not avoided by the mere fact of reconciliation and resumption of cohabitation.' " *Id.* at 642, 1 O.O. at 462, quoting from the headnote to the Annotation ([1933], 85 A.L.R. 417) to *Hagerty* v. *Union Guardian Trust Co., infra.*

"A true property settlement, according to the better view, is not· affected by a reconciliation and resumption of cohabitation. Or, stated as a rule of evidence, proof of reconciliation and resumption of cohabitation does not alone establish the termination of a property settlement." (Footnote omitted.) Annotation, Reconciliation as Affecting Separation Agreement or Decree (1954), 35 A.L.R. 2d 707, 709.

It has been held that a property settlement is not affected by such conduct unless the parties actually agreed that the settlement shall be terminated. *Hagerty* v. *Union Guardian Trust Co.* (1932), 258 Mich. 133, 242 N.W. 211, 85 A.L.R. 417. See *Leedy* v. *Malcolm* (App. 1930), 8 Ohio Law Abs. 640. In other words, the settlement is not affected by a reconciliation unless there is a mutual understanding of the spouses, amounting in legal effect to a contract, that the agreement is rescinded. *Hagerty, supra.*

In *Justice* v. *Justice* (1952), 64 Ohio Law Abs. 252, 255-256, 52 O.O. 255, 256, 108 N.E. 2d 874, 876, the Common Pleas Court of Erie County held that "when there has been a resumption of marital relationship [after a decree for alimony only has been awarded], and a subsequent separation without a modification of the former order, the former order *remains in effect* until one of the parties upon proper application can prove to the satisfaction of the Court by competent evidence that it was the express intent of both parties to abrogate the order or that the resumption of marital relationship was under such circumstances and conditions that the Court would be warranted in finding from the evidence that a bona fide reconciliation had in fact occurred." (Emphasis added.) The court further stated that:

"The declared policy of the law is to encourage a reconciliation and courts should be ever cautious lest their orders or decrees hinder or discourage it. However, when the parties honestly desire to inquire if a reconciliation is possible, they should not be forced at the outset of their attempt to abandon or give up their established rights and duties under the separation decree and as a result attempt the reconciliation at their peril. It is the opinion of this Court that such a rule of law, would tend to discourage rather than encourage a reconciliation.

"Foolish indeed, would be the woman with minor children, who would take such a gamble with her declared rights under a decree. Should such a reconciliation fail, through no serious fault of either party, the woman would then be forced to commence new proceedings for alimony and support and incur additional expense that goes with such proceeding. * * *" *Id.* at 255, 52 O.O. at 256, 108 N.E. 2d at 875-876.

Recently, the Supreme Court of Kansas decided a case remarkably similar to the facts presently before us. In *Eaton* v. *Johnston* (1984), 235 Kan. 323, 681 P. 2d 606, the parties were married in 1957 and divorced in 1977; a short period after the divorce was granted, the parties resumed living together and continued to do so for approximately two and one-half years. The parties jointly acquired a house and incorporated their business. In 1981, defendant conveyed his interest in the house and all of his stock in the corporation to plaintiff wife. They separated again in late 1981.

The Kansas Supreme Court held that the trial court was authorized to make an equitable division of the property accumulated by the parties during the period they lived together after the divorce although no common-law marriage had been established. The court, however, noted the following language from the court of appeals' opinion with apparent approval:

" 'It is to be noted that a division of the property accumulated by these parties to the date of their divorce on August 3, 1977, was effected by the decree rendered on that date and, in light of the fact the parties did not remarry, the property division then adjudicated is final and may not now be disturbed. *Wallace* v. *Wallace,* 214 Kan. 344, 520 P. 2d 1221 (1974) * * *.' " 235 Kan. at 326, 681 P. 2d at 609.

The evidence is indisputable that the parties cohabited for a period of six months after their divorce. The evidence also discloses that the parties were married for twenty-five years and accumulated substantial marital assets. The record further discloses that the parties entered into a separation agreement which was incorporated into the parties' final divorce decree and which allocated substantial property to each party. The agreement provided that the wife would receive two large lump sum payments within one year after the divorce as well as monthly rental payments from rental property owned by the parties.

Appellant contends that since the parties cohabited for this six-month period and had apparently reconciled, the executory provisions of the final divorce decree should be deemed void. We disagree that the appellant should receive such a windfall, absent clear evidence that the wife intended to abandon her rights in the final decree of divorce by her cohabitation with her former husband.

We agree with Judge McCrystal who many years ago, in *Justice, supra,* opined that public policy should encourage divorced parties to reconcile and remarry where it is possible to do so. This is particularly true where minor children survive the breakup of a marriage. To hold that brief attempts at reconciliation and consequent cohabitation render executory divorce decree provisions void upon evidence of cohabitation would undoubtedly discourage such reconciliation efforts.

We therefore hold today that before reconciliation and cohabitation will render executory divorce provisions void and unenforceable, the party who would seek to avoid the decree must seek a declaration from the court that the executory provisions of the decree have been voided by the parties' reconciliation. That party bears the

burden of proof by clear and convincing evidence that the parties have expressly intended to abrogate the executory terms of the decree or that the circumstances are such that the court can find from the evidence of reconciliation and cohabitation that the parties mutually understood that the executory provisions of the decree were rescinded. In any event, the decree provisions remain in force until voided by court decree which shall be prospective in effect only. The second assignment of error must, therefore, on the state of this record, be overruled.

In his third assignment of error appellant contends that the court lacked jurisdiction to award more money than the amount requested for the satisfaction of the property settlement. Appellee sought, in her motion for contempt, the additional amount of $15,762.94 which represented payments from the parties' joint checking account after the apparent reconciliation. Appellee claimed the expenditures were for the exclusive benefit of the appellant.

R.C. Chapter 3105 limits the jurisdiction of courts of common pleas exercising jurisdiction over matters involving divorce, alimony, annulment, and dissolution of marriage. We have concluded that the parties cohabited as unmarried individuals. As such, any sums due from expenditures out of the parties' joint account is a matter beyond the jurisdiction of the court in the exercise of its divorce jurisdiction.

We agree with the appellant that the court lacked jurisdiction to require appellant to reimburse appellee for these disbursements. Appellee made these payments on behalf of appellant at her own risk. Her remedy should be found in a court with jurisdiction to award a judgment for the sums expended. The assignment of error is well-taken.

In his fourth assignment, appellant contends the trial court abused its discretion in awarding interest on the obligation arising out of the division of the marital property. R.C. 1343.03(A) provides that when money becomes due and payable upon orders of any judicial tribunal for the payment of money arising out of a decree or other transaction, the creditor is entitled to interest at the rate of ten percent per annum. "Whether to award interest upon obligations arising out of the division of marital property is within the discretion of the trial court. * * *" *Koegel* v. *Koegel* (1982), 69 Ohio St. 2d 355, 23 O.O. 3d 320, 432 N.E. 2d 206, syllabus. The trial court determined interest was to be calculated from the time of the filing of the original motion for contempt, *i.e.,* June 1, 1984. We see no abuse in the court's order. The assignment of error is accordingly overruled.

In his fifth assignment, appellant contends that the trial court abused its discretion in finding the appellant in contempt of court. Appellant contends that because he believed that he had remarried his wife by virtue of a common-law marriage, he did not intentionally violate the provisions of the court's divorce decree. The court cited *Pugh* v. *Pugh, supra,* as authority for the citation of contempt. In *Pugh, supra,* at paragraph one of the syllabus, the Supreme Court of Ohio held that "[p]roof of purposeful, willing or intentional violation of a court order is not a prerequisite to a finding of contempt."

"* * * [C]ourts distinguish criminal and civil contempt not on the basis of punishment, but rather, by the character and purpose of the punishment. * * * Punishment is remedial or coercive and for the benefit of the complainant in civil contempt. Prison sentences are conditional * * *, [and] [t]he contemnor * * * will be freed if he

agrees to do as ordered. \* \* \*'' *Brown v. Executive 200, Inc.* (1980), 64 Ohio St. 2d 250, 253, 18 O.O. 3d 446, 448-449, 416 N.E. 2d 610, 613.

The order finding appellant in contempt was a civil contempt. Intent is not a necessary element of civil contempt. *Windham Bank* v. *Tomaszczyk* (1971), 27 Ohio St. 2d 55, 56 O.O. 2d 31, 271 N.E. 2d 815. Appellant failed to comply with the court's decree at his own risk. The evidence indisputably demonstrates noncompliance. The assignment of error is overruled.

The judgment of the trial court ordering appellant to pay appellee $80,382.94 is modified to an order to pay $64,620, plus ten percent interest from June 1, 1984, and as so modified, the judgment of the trial court is affirmed.

*Judgment accordingly.*

WOLFF and FAIN, JJ., concur.