AGNES JONES, Appellant and Respondent, *v.* JOHN JONES, Respondent and Appellant.

*Divorce — the law of England does not apply in New York — a decree of separation can be revoked only by the court — the court's consideration of a question not before the court.*

The ecclesiastical law of England relative to divorce was never adopted in the State of New York, and the statutes of that State relating to the subject are original regulations.

The only method by which a judgment for a separation forever, or for a limited period, can be revoked, is that prescribed by section 1767 of the Code of Civil Procedure, and it can only be done by the court.

The fact that after a decree of separation was granted the parties lived together as husband and wife does not operate to revoke the decree.

Where the question of collecting unpaid alimony is not before the court it has no power to make any order affecting the rights of the parties in that respect.

APPEAL by the defendant, John Jones, from so much of an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 26th day of August, 1895, as directs him to continue paying alimony from August 1, 1895, under a decree of separation entered in this action on the 6th day of June, 1890, and from each and every part of said order, except in so far as it denies the motion of the plaintiff to punish the defendant for contempt of court in having failed to pay alimony under the said decree from the date of the entry thereof to the time of the making of the motion to punish the defendant for contempt.

Also, an appeal by the plaintiff, Agnes Jones, from so much of said order as prohibits said plaintiff from taking any proceedings against said defendant as for contempt of court to collect or secure the payment of the back alimony granted to the plaintiff under said decree.

*Albert Day*, for the plaintiff.

*Ralph H. Raphael*, for the defendant.

PARKER, J.:

Both parties appeal from the order under review, which is the outcome of a motion on the part of the plaintiff to punish the

defendant for contempt of court in refusing to pay alimony awarded by a judgment adjudging that the plaintiff and defendant be separated from bed and board forever.

The judgment was granted and entered in this county on the 6th day of June, 1890, and the defendant never made any payment thereunder to the plaintiff. From the affidavits submitted on the motion it appeared that the plaintiff, shortly after its entry, went to the defendant's home in New Jersey and lived there for a considerable length of time. The defendant claims that his wife freely returned to him and asked to be taken back, while she asserts that she was induced to go to his home in New Jersey by a letter received from the defendant, in which he asked her to call and receive payment of the alimony due to her under the decree. That upon her calling, he kneeled down and begged her to return to him. After a time, it seems, they found themselves unable to get on together, and the husband then instituted proceedings in New Jersey for a separation, which resulted in the dismissal of his petition. The learned judge at Special Term was of the opinion that, inasmuch as the husband had actually provided for his wife and children during some considerable portion of the time, and was compelled to pay to her costs and alimony in the proceeding instituted by him in the courts of New Jersey, considered in connection with the fact that he is a man without means, ought to be accepted by the court as a sufficient reason for refusing to punish him for contempt, because of his failure to pay, in addition, the sum awarded by the decree.

Our examination of the affidavits induces us to approve of the manner in which the Special Term exercised its discretion. The defendant, however, insisted that the legal effect of the return of the plaintiff to the defendant's home, followed as it was by their living together for quite a period of time, was to annul the decree of separation, and hence plaintiff's motion should be denied on the ground that there was no decree in existence upon which to base the motion. The court held the decree to be still in force, and that plaintiff should be paid alimony after August 1, 1895, in accordance with its provisions. From so much of the order as recognizes the judgment of separation to be in full force and effect, the defendant appeals. The question presented by such appeal, therefore, is whether the fact that the parties lived together as husband and wife

after the entry of the decree operated to revoke it? Section 1767 of the Code of Civil Procedure provides that: "Upon the joint application of the parties, accompanied with satisfactory evidence of their reconciliation, a judgment for a separation forever, or for a limited period, rendered as prescribed in this article, may be revoked at any time, by the court which rendered it, subject to such regulations and restrictions as the court thinks fit to impose." This provision was taken from the Revised Statutes and was first enacted in 1828 (2 R. S. p. 147, § 56). Prior to that time there was no statute in this State on that subject.

The defendant's contention is, that the ecclesiastical law of England, so far as it related to the subject of divorce, became a part of its common law, and, therefore, was, by the Constitution of 1777, made a part of the law of this State, subject, nevertheless, to such alterations as the Legislature should make. Hence, at the time of the enactment of the statute to which we have referred, it was the law of this State that subsequent cohabitation and reconciliation avoided and rendered of no effect a decree of separation, as the statute in terms was not exclusive. His further contention is that the remedy provided by the statute was cumulative with the one already existing at common law.

This general question came before Chancellor SANDFORD in 1825 in the case of *Burtis* v. *Burtis* (Hopk. Ch. 557), which was an action to annul a marriage contract on the ground of the impotency of the husband, which was not at that time authorized by the statutes of the State. The plaintiff's contention was, as is the defendant's here, that such was the law of England, and that it had become part of the law of this State.

The learned chancellor reached the conclusion that the law of England concerning divorce was never adopted in this State; that our statutes concerning divorce are original regulations which do not adopt or introduce the ecclesiastical law of England. In the course of his argument he asserted that from the time when New York became a province of England down to the time of its becoming a State, there were but four divorces, and these were granted by Governor Lovelace, one in 1670 and the other three in 1672; that the colony never had a court possessing jurisdiction of matrimonial causes, or power to grant divorces, and that its Legislature

never enacted a statute defining the causes of divorce or authorizing divorce, and reasoning, from these and other facts considered he reached the conclusion that the law of England concerning divorce and matrimonial causes was never adopted in fact or in practice and never became the law of the colony. As the Constitution of 1777 provided that "such parts of the common law of England and of the statute law of England and Great Britain and of the acts of the Legislature of the colony of New York as together did form the law of the said colony    *    *    *    shall be and continue the law of this State, subject to such alterations and provisions as the Legislature of this State shall, from time to time, make concerning the same," his conclusion necessarily followed that the law of England concerning divorce and matrimonial actions does not form a part of the law of this State.

This case, so far as we have been able to ascertain, has never been criticised by the courts, and it was followed in *Campbell* v. *Crampton* (18 Blatchf. C. C. 150, 160).

In *Barrere* v. *Barrere* (4 Johns. Ch. 187) Chancellor KENT, in an action for a separation, carefully considered for what period and upon what terms and conditions a separation should be decreed.

The necessity for its consideration was predicated upon the provisions of the statute which authorized the chancellor to decree a separation forever, "or for a limited time," or "to make such other decree" as the case may require. And the importance of a right disposition of it, not only from the standpoint of the parties directly involved, but also from that of the public, which is always treated as a third party in matrimonial actions, was carefully considered as aids to that wisest possible conclusion at which he aimed. He referred to the practice in such cases in England, France and Holland, making special note of the fact that while the decree of divorce *a mensa et thoro* in England is said to be either for a time or without limitation of time, yet, by the form of the decree the separation is only until a reconciliation. He followed the discussion of the authorities upon the practice in such cases in the several countries to which we have referred, with the following observations : " My inference from this review is that, by the canon law of England, and of the nations on the continent, where the canon law prevails, a time for reconciliation is left open to the parties

# 418                    JONES *v.* JONES.

upon these qualified divorces from bed and board, and the indulgence is founded in sound policy and dictated by benevolence. The question then arises, whether the decree ought not to pursue the *formula* given in Oughton (Oughton's Ordum Judicorum, tit. 215, § 4), and declare a separation until the parties shall be reconciled to each other; I assume that I have competent power to make such a decree under the statute, for the statute authorizes the Chancellor to decree a separation 'forever,' or 'for a limited time,' or to make 'such other decree' as the case may require. But such a general decree seems to be of too loose a texture and to be destitute of the requisite sanction. It separates the parties until they are reconciled, and leaves that event open to dispute.   *   *   *   I prefer that the sentence shall be binding and effectual, until the parties shall have applied to the court, and received upon just grounds a judicial recognition of the certainty and sincerity of their reconciliation." He directed that the decree to be entered should provide "That the plaintiff and defendant be separated from bed and board forever, provided, however, that the parties may at any time hereafter, by their joint and mutually free and voluntary act, apply to the court for leave to be discharged from this decretal order." This decree which the learned chancellor made as a just exercise of the power conferred upon him by the statute, seems to have so favorably impressed the Legislature that nine years thereafter they incorporated the practice adopted by him into a statute, and it has continued to be the law of this State ever since.

We think that costs should not have been allowed to the plaintiff, nor should the concluding paragraph of the order have been inserted, which reads as follows : "And without prejudice to proceedings to collect or secure the back alimony, by proceeding other than with the contempt proceeding." That question was not before the court, and it was powerless, therefore, to make any order affecting the rights of the parties in that respect.

The order should be accordingly modified, and as so modified affirmed, without costs.

VAN BRUNT, P. J., concurred.

Order modified as directed in opinion and as modified affirmed, without costs.