159 So. 80

## ADAMS v. ADAMS.

### I Div. 815.

Supreme Court of Alabama.
Dec. 20, 1934.

Rehearing Denied Jan. 24, 1935.

Inge, Stallworth & Inge, of Mobile, for appellee.

Harry T. Smith & Caffey, of Mobile, for appellant.

GARDNER, Justice.

In December, 1930, appellee (the wife) obtained a decree of absolute divorce from her husband, this appellant. The parties had been married about fourteen years, and moved in good social circles in Mobile. There were no children. The divorce was on the ground of voluntary abandonment. The husband went to the home of his father to reside. The wife is now under the same roof with her parents, but maintains a separate apartment, though taking meals with them. Upon first separation defendant gave complainant $200 per month. This continued for some months, and when final decree was entered she was awarded permanent alimony in the sum of $150 per month, together with certain policies of insurance on the life of the husband, the premiums to be paid by him, amounting to a monthly average of about $35. The alimony decree was in exact accord with the agreement of the parties on file in the cause.

Under our more recent decisions, this character of decree as to alimony was subject

to future modification as the equities of the parties may demand, though it contained no express reservation of control for that purpose. Worthington v. Worthington, 224 Ala. 237, 139 So. 334, 335; Epps v. Epps, 218 Ala. 667, 120 So. 150; Littleton v. Littleton, 224 Ala. 103, 139 So. 335. But that question is here of no practical importance for the reason that in each decree rendered in this cause jurisdiction for this purpose was expressly reserved. Nor is the power of modification and control affected by the fact that the amount of alimony fixed in the decree was pursuant to an agreement of the parties.

We have here followed the lead of those authorities which adopt the theory that such an agreement "becomes merged into the decree and thereby loses its contractual nature at least to the extent that the court has the power to modify the decree when changed circumstances so justify." Worthington **v.** Worthington, supra.

The defendant continued to meet the requirements of this decree until in April, 1932, he filed a petition seeking a reduction in the amount of alimony to be paid, alleging changed financial conditions justifying a modification. A reference was held resulting in a report by the register making an allowance to the complainant of $108.33 per month for the term of one year, at the expiration of which time defendant was to have an audit made of the books of the firm of B. F. Adams & Co., a partnership, composed of defendant and his father, engaged in the business of insurance; the defendant owning one-half interest. The report contemplated that if the audit disclosed a profit for that year, the wife should receive one-third of his share of the profits, less whatever amounts may have been paid to her during the year over and above her monthly allowance of $108.33. This report was duly confirmed in July, 1932, the court retaining jurisdiction for such other orders as to the allowance as the court may deem proper.

Thereafter (October 4, 1933) the parties entered into another written agreement to modify and extend the terms of the decree of July, 1932, and agree upon a basis for the payment of alimony, in which it was stipulated the complainant should be paid one-third of defendant's monthly salary, but in no event less than $100 per month, so long as he receives a monthly salary of $250; and, also, he is to continue the premium payments on designated life insurance policies.

In paragraph C of the agreement is the stipulation for an audit of the books for the year 1932, and during January of each year thereafter for the preceding year, with the view that should an actual profit be disclosed by the audit complainant should receive one-third of his share, less any amount paid her over and above her monthly allowance of one-third of his salary and less the cost of the insurance premiums. Further details are considered unnecessary.

The audit for 1932 did not show a profit. As appears from correspondence between these parties, complainant objected to some few expense items (three in number), as shown in the audit. Defendant replied that he considered complainant's objection as a repudiation of the agreement for an audit, and justified a rescission thereof on his part. While, as argued by counsel for defendant, the meaning of the word "audit" in a broad sense may embrace not only an examination of accounts and a comparison of charges with vouchers, but also an allowance or rejection of charges and a statement of balance (Fuller, etc., Co. v. Shannon & Willfong, 205 Iowa, 104, 215 N. W. 611; Western N. Y. Inst. v. Broome County, 82 Misc. 63, 143 N. Y. S. 241; Conover v. West Jersey Mortgage Co., 96 N. J. Eq. 441, 126 A. 855), yet it is sometimes restricted in its meaning to a mere mathematical process, a comparison of charges with vouchers. Travelers' Ins. Co. v. Pierce Engine Co., 141 Wis. 103, 123 N. W. 643; Ford v. Springer Land Ass'n, 8 N. M. 37, 41 P. 541. Its true meaning is to be ascertained from the context, all surrounding facts, and the purpose to be accomplished—all to determine the intention of the parties.

Here, so viewed, we think the word should be given its more restricted meaning. The agreement was for practical purposes, to ascertain if in fact there was an actual profit of the business, and an audit of the books was desired. In Shriner v. Craft, 166 Ala. 146, 51 So. 884, 28 L. R. A. (N. S.) 450, 139 Am. St. Rep. 19 (cited by defendant), there was a valid and binding agreement that the architect's certificate should be conclusive on the parties. But there is here no such agreement— merely for an audit of the books of the partnership.

We therefore conclude that complainant's objection to certain items as shown on the books constituted no breach of the agreement on her part for an audit, and gave no justification to defendant for a repudiation thereof.

Further audit was refused and complainant receiving no alimony petitioned the court for relief. The court in March, 1934, had an oral hearing, at which the parties to this cause testified. Upon this hearing, the chan-

cellor, pretermitting any other questions presented, rendered a decree in complainant's favor for $433.32, representing monthly alimony payments for December, 1933, and January, February, and March, 1934, which were in arrears, and further decreed that defendant pay complainant $108.33 on April 1, 1934, and on the first day of each month thereafter, until otherwise ordered by the court. The decree also provided that defendant continue in force the life insurance policies payable to complainant, named in the first decree rendered. It is from this decree that defendant has prosecuted the appeal.

■■ Defendant insists the court could render no decree for monthly payment of alimony after the decree of July, 1932, for the reason this was a lump-sum decree which upon its termination as to time exhausted the court's jurisdiction. But, all other matters aside, we cannot agree that this was a lump-sum decree. There was existent in complainant's favor, and pursuant to written agreement on file, a decree calling for the monthly alimony of $150, and it was evidently to reduce this amount that defendant petitioned the court for a reconsideration, and in answer to his petition this modified decree of July, 1932, was rendered. Under this decree the monthly payments were reduced to $108.33, but with a provision for an audit of the books, and an increase at the expiration of twelve months should the business show a profit. The parties themselves considered the July decree as offering temporary relief for defendant, and as in no manner a lump-sum payment, for after the expiration of the twelve months they entered into another written agreement, stating in its preamble "the desire of the parties hereto to modify and extend the terms of the decree of 1932 and agree upon the basis of the payment of alimony."

We find nothing in the July decree justifying the conclusion that it was intended as a lump-sum payment, and as exhausting the jurisdiction and power of the court over the matter of alimony. There was disagreement over the matter of auditing the books, and defendant claimed the right to rescind the contract. He met the monthly alimony payments of $108.33 through November, 1933, but offered thereafter $100 per month to be accepted only upon certain conditions specified by him, and which were not agreeable to complainant. The July decree was, as noted, extended by the parties, and the chancellor, finding four monthly payments in arrears, had the right to decree their payment, and to then further decree the like amount each month

thereafter until otherwise ordered. Nor do we think defendant can complain as to the amount. The chancellor is to consider the situation of the parties, their station in life, her dependency, and his capacity to pay, which in the instant case was very largely a matter of earning power in connection with an established business firm. As a circumstance to be considered, also, are the voluntary agreements made by defendant, as indicating his own estimate of his ability to pay, as well as his own idea of the needs of the complainant. Undisputedly, defendant has all along drawn a minimum salary of $300 per month.

■ Much argument is advanced in defendant's behalf upon the theory that the firm's business was not profitable at this particular period. But the question of the duty of maintenance for an abandoned wife should not be made to rest upon too rigid an examination of the books or upon mere variations in business success or failure. His capacity to pay is the prime question, her needs being established. And defendant, with no dependents, living with his parents, equally interested with his father in an established and going concern and drawing regularly a salary of at least $300 a month, cannot be justified in scaling her allowance each month solely upon the matter of profit and loss in a business varying in its results.

■■ The parties were before the chancellor, and their manner of testimony open to his observation. Proper for consideration also was the extension of the partnership agreement entered into between defendant and his father in January, 1933, wherein the value of the firm is fixed at $24,000. For an income complainant is wholly dependent upon the alimony awarded her, possessing, as she does, only a vacant lot of doubtful value at the time, some household furniture, and an automobile. Much must be left to the wise discretion of the trial court (19 Corpus Juris, 249), and consideration should be given to the fact he saw and heard these parties testify. Cairnes v. Cairnes, 211 Ala. 342, 100 So. 317.

■ In the light of all the circumstances here disclosed, the amount fixed by the chancellor cannot be held to be excessive. Folda v. Folda, 174 Ala. 286, 56 So. 533; Smith v. Rogers, 215 Ala. 581, 112 So. 190; Plunkett v. Plunkett, 223 Ala. 400, 137 So. 24; Phillips v. Phillips, 221 Ala. 455, 129 So. 3; 19 Corpus Juris, 266.

■ Defendant further insists the court had no right to stipulate in the decree that his life insurance be kept in force in favor

of the complainant as beneficiary, and much argument is advanced to the effect the policies were not examined for their terms, nor the solvency of the companies first ascertained, with the added suggestion of a possibility that the insurance may, in the final result, inure to the benefit of complainant's heirs. But viewed from a practical standpoint, we see no difficulties in the way. Should complainant survive defendant, then the insurance would very properly inure to her benefit, for such is its purpose. We may here add, however, that the decree contemplates this provision, as well as the monthly payments, shall cease and become inoperative upon complainant's remarriage. Should defendant survive complainant, we apprehend no difficulty in the way of a change of beneficiary so as to avoid defendant's conjectured result. The court has, as previously noted, a reserved jurisdiction of control over the decree as changed conditions may justify. As to the propriety of such an order, we think the chancellor clearly had the right, without regard to any other question, to rest the decree in that respect upon the agreement of defendant. It was his own agreement and these were policies he, himself, procured in the companies of his selection. Should they prove insolvent, or fail to carry out their purpose, the loss would fall upon complainant. But, in any event, we can see nothing in the decree as to this feature of which defendant can complain, for the all sufficient reason, it but followed his voluntary agreement.

As to cross-assignments of error little need be said. Complainant was before the chancellor, and testified, and whether her affidavit previously made was properly excluded or not could clearly have worked no prejudice to her case.

What has been said indicates our view that the alimony decree of 1930 did not automatically become operative, but that the matter was open for another decree, which was entered. The chancellor made no finding upon the question of the audit of the books of the firm, and nothing is here presented for review in that regard.

We may add, however, with due propriety, that the method adopted was not exclusive nor binding upon the court. It merely looked to defendant's ability to pay and concerned no question of vested rights.

If examination of the books in the future be deemed necessary, or desirable, the court has ample power in the usual method of procedure by reference or before the court itself, to have the books produced for such an examination.

We have here considered the questions presented and argued on this appeal, and our conclusion is that no error to reverse is made to appear.

Let the decree accordingly be here affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.

☞For other cases see same topic and KEY NUMBER in all Key Number Digests and Indexes