74 So.2d 582

Thomas James WILLIAMS

v.

Naomi B. WILLIAMS.

1 Div. 484.

Supreme Court of Alabama.

Aug. 30, 1954.

Holberg, Tully & Aldridge, Mitchell G. Lattof, Mobile, for appellant.

V. R. Jansen, Mobile, for appellee.

CLAYTON, Justice.

This is an appeal by Thomas J. Williams, who for convenience will be referred to herein as the husband, from a decree of

the Circuit Court of Mobile County, in equity, whereby certain real and personal property was awarded to Naomi Williams, who will be referred to as the wife.

The original bill filed by the wife against the husband prayed for an accounting from the husband for the alleged sale of certain cattle and pecans during the period from February 14, 1944 to August 25, 1949, the day the bill was filed, and following such accounting for a division between the husband and wife of the remaining cattle, in accordance with the result of the accounting, so as to balance accounts between them.

The wife's claim of right to relief was based upon two contracts between the parties dated February 2, 1944 and February 14, 1944, and a decree of the Circuit Court of Mobile County, in Equity, dated February 14, 1944.

The husband filed an answer and cross bill, in which he denied any debt due the wife by account or otherwise, and averred that the intention of the parties in making said contracts was to provide continuing maintenance and support for the wife and children following the decree of divorce which was expected to be and was obtained immediately after execution of the contract of February 14, 1944; that the parties subsequently were remarried on July 18, 1944, and resumed cohabitation as man and wife, and continued such from said date until October 2, 1949, when the wife summarily ejected the husband from the family home and willfully abandoned him; that both husband and wife affirmatively or tacitly agreed, understood and intended that said contracts and decree were abrogated by the remarriage and resumption of cohabitation; that the herd of cattle was owned and managed as his own, with full knowledge and consent of the wife and that he is the sole owner; that he is the sole owner of the tractors; trucks, automobile, farm machinery, etc.; that of the 1395 acres of land and the family home in Grand Bay, record title to all of which is now in the wife, he claimed at least an undivided one-half interest in 600 acres because the entire purchase price of it and

other lands was paid from his own personal funds derived from operation of his farms, and he claimed an undivided one-half interest in the family home because he paid one-half the cost of purchase and development, all under such circumstances as to justify the court in making a decree in keeping with his claim; that title to lands purchased was put in the wife's name because of litigation in which the husband was involved at the time.

A brief delineation of events leading to this litigation may be stated as follows: In July 1918, Thomas J. Williams, an enlisted man in the United States Navy, married Naomi Berthaut, the daughter of a well-to-do owner and manager of a ship building and ship repair business at Algiers, Louisiana. The wife's father was not pleased with his daughter's marriage and did not visit nor correspond with her for some years. Following the husband's discharge from the Navy, he was given vocational training by the Veterans' Administration at Pascagoula, Mississippi, where the couple bought a home for $500, with money provided by the wife. In 1922, they sold the home in Pascagoula and applied the proceeds of the sale on the purchase price of 80 acres of land in Mobile County, Alabama, near Grand Bay, upon which they built a home. Both husband and wife worked in the fields and their income from farming, together with the husband's compensation as a disabled veteran, constituted all their income until 1927. The wife and her father became reconciled in October, 1927, at which time he gave her a check for $1,000. Subsequently, he gave her other substantial checks, including one for $2,500 in March, 1929, which paid most of the purchase price of the home in Grand Bay, after which time he paid the wages of a maid for his daughter and bought groceries, clothes for the children, and other supplies on the occasions of his frequent visits and helped them financially until his death in 1939.

Beginning about 1929 or 1930, the Williams began buying tax titles to land in the vicinity of Grand Bay and continued to buy lands by quit-claim and otherwise until at

the institution of the present suit a total of about 1,395 acres and the home in Grand Bay had been acquired; and they engaged in cattle, pecan and farming operations. Mrs. Williams' father died in 1939 leaving her a considerable estate. Through the years until 1944, the husband and wife used a joint bank account, into which was deposited income from farm operations, as well as money received by the wife from her father and from his estate. All lands bought were paid for by check on the joint account until 1944, and thereafter out of the personal account of Mrs. Williams, which was a part of her separate estate.

The list of conveyances in the transcript entitled "Realty Acquisition Record," does not contain the names of the grantees in any instances. We cannot know with exactness in every case whether the grantee of the lands, when first bought by the Williams, was the husband or the wife, or the husband and wife jointly. But this is not a matter that is essential for our decision. The husband was record owner of one-half undivided interest in 240 acres in section 19, immediately before execution of the contract of February 14, 1944, and the Equity decree of the same date, and the wife was record owner of the rest of the lands at that time. The husband executed a statutory warranty deed conveying to the wife the 240 acres in section 19 on February 14, 1944.

This marriage proved typical of those which under adversity border on the sublime in fortitude, but cannot weather the storm of luxury.

In December 1943, the husband asked his wife for a divorce. The wife gave him $4,000 in cash, executed two contracts fixing their respective rights in real and personal property and submitted same, together with testimony relative to the infidelity of the husband, to the Chancellor for a decree.

Perhaps a clearer understanding of the situation of the parties at the beginning of the instant suit can be gained by setting out herein verbatim the two contracts and the decree of February 14, 1944. So, here they are:

*Contract of February 2, 1944.*

"State of Alabama
County of Mobile

"Know All Men By These Presents that whereas an action for divorce is pending in the Circuit Court of Mobile County, Alabama, in Chancery, in which Naomi Berthaut Williams, hereinafter called the wife, is Complainant, and Thomas James Williams, hereinafter called the husband, is Respondent, and

"Whereas, the said parties deem it to the best interest, welfare and benefit of themselves and their children, who are hereinafter named, to effect a settlement of their respective rights and property rights,

"Now Therefore, in consideration of the premises and the mutual covenants and agreements herein contained, and in further consideration of the sum of One ($1.00) Dollar in hand paid, each to the other, it is hereby agreed as follows:

"1. The wife shall have the care, custody and control of the children born to the parties, whose names and respective ages are as follows:

"Lemoine Williams, twenty years of age; Wincen Williams, seventeen years of age; Edgar Williams, fifteen years of age; and Sewell Williams, eleven years of age.

"The said husband shall have the right to see the said children at any reasonable time of day, but the wife shall have the right to reside with the said minors in the City of New Orleans, Louisiana in her exclusive discretion.

"2. Of the lands owned by the wife in Mobile County, Alabama, the said husband shall have the privilege of using the property located in Sections

7, 8, 9 and 18 all in Township 7 South, Range 3 West, in Mobile County, Alabama, provided however, that the said use of the husband is permissive at the option of the wife, and is subject to termination by her at will. In the event that the said husband shall use the said property for pasturage, he shall pay all State and County ad valorem taxes during the time that he occupies the same. In the event the said husband shall occupy the said property during the period of the years when the pecan crop is ready for gathering, the wife shall permit him to gather or to have gathered the pecan crop yielded by the pecan orchard on said property, and shall pay to him for his services and efforts fifty (50%) percent of the income derived from the sale of said pecan crop. The occupancy of said property by the said husband shall confer no rights upon him with respect to the timber, and he shall not cut or permit any of the timber on the said property to be cut.

"3. It is hereby agreed that the said husband and wife shall each have a fifty (50%) percent interest in the herd of cattle which is presently located on the said property, provided however, that for and in consideration of the sum of One ($1.00) Dollar and the use of the lands of the wife for pasturage of all of the said herd of cattle, the said husband does hereby agree to make a last Will and testament under the terms of which his interest in the herd of cattle shall be bequeathed on his death to his four children, named hereinabove, if any of said herd of cattle be unsold at the time of the death of the husband. No sale of the cattle shall be made without the mutual consent of said husband and wife, and a full accounting shall be made to the wife in connection with any transaction relating to the herd of cattle.

"4. In the event of a decree of divorce being rendered in said cause in favor of Naomi Berthaut Williams, this agreement shall be incorporated into said decree and made a part thereof.

"In Witness Whereof, the said parties have hereunto set their hands and seals on this 2nd day of February, 1944.

"Sgd. Naomi Berthaut Williams (Seal)
"Sgd. Thomas James Williams (Seal)
"Sgd. Charles Hoffman Witness to signature of Naomi B. Williams.
"Sgd. Charles Hoffman Witness to signature of Thomas J. Williams."

*Contract of February 14, 1944.*

"State of Alabama
County of Mobile

"Know All Men By These Presents, That whereas Naomi Berthaut Williams and Thomas James Williams are the owners of the hereinbelow described real property, which is located in the County of Mobile, State of Alabama, and

"Whereas, a suit for divorce is pending in the Circuit Court of Mobile County, Alabama, in Chancery, between said parties, in which Naomi Berthaut Williams is the Complainant and Thomas James Williams is Respondent, and

"Whereas the said parties entered into an agreement in writing, which is on file in the Chancery Court in said cause, relating to an adjustment of the affairs of the parties, and it is desired to amend said original agreement by making an addition thereto,

"Now Therefore, for and in consideration of the premises, the mutual agreements and covenants hereincontained, and the sum of One ($1.00) dollars, in hand paid by each of the said parties to the other, it is agreed as follows:
"1. The said Thomas James Williams shall forthwith convey by Statutory Warranty Deed unto Naomi Berthaut Williams his undivided one-half interest in and to the following described real property, which is located in the County of Mobile, Alabama, to-wit:

"Northeast Quarter (NE ¼) Section nineteen (19) Township 7 South, Range 3 West, in Mobile County, Alabama, and East half (½) of Northwest Quar-

ter (NW ¼) of Section nineteen (19) Township 7 South, Range 3 West.

"2. It is hereby agreed that the said Thomas James Williams shall have the right to occupy the said real property, to use the same, and to promote revenue therefrom; provided however, that he shall pay to the said Naomi Berthaut Williams fifty (50%) percent of all revenue and income from the use thereof, after deduction of reasonable expenses, whether the same be derived from farming, terpentining, timber, or any other source. It is further agreed that the said Thomas James Williams shall pay all State and County ad valorem taxes on the said property during his occupancy of the same; that he shall make complete and accurate financial records of all matters relating to the said property, which shall be available for the inspection of the said Naomi Berthaut Williams or her agents at any reasonable time, and that he shall make full and complete written report of all such activities and revenue annually.

"3. It is further agreed between the parties hereto that the right of occupancy conferred upon the said Thomas James Williams in paragraph number 2, immediately hereinabove, shall be fixed and definite, and the same shall not be subject to cancellation by Naomi Berthaut Williams, provided however, that all rights of said Thomas James Williams to the said real property, and all improvements thereon, and additions thereto, shall cease and terminate either upon his death or upon his voluntary relinquishment or abandonment thereof.

"In Witness Whereof, the said parties here hereunto set their hands and seals on this 14 day of Feb. 1944.
"/s/ Thomas James Williams (Seal)
"/s/ Naomi B. Williams (Seal)

"Witnesses:
"Charles Hoffman /s/
"Mildred Robinton /s/"

*Decree of February 14, 1944.*

"The State of Alabama, Mobile County

| "Naomi Berthaut Williams Complainant No. 19, 253–G vs Thomas James Williams Defendant | Circuit Court in Equity At Mobile, Alabama. |
|---|---|

"This cause is submitted for decree on the pleadings, and the testimony as shown by the note of submission on file, and on consideration, it is ordered, adjudged and decreed by the Court that the Complainant is entitled to relief, and that the bonds of matrimony heretofore existing between the Complainant and the Defendant be and the same are henceforth dissolved and annulled.

"It is further ordered and decreed that the Complainant, Naomi Berthaut Williams be, and hereby is, permitted to again contract marriage, subject to such provisions of the law as regulate the marriage of divorced persons, but in no event before the expiration of sixty days after the rendition of this decree.

"It is further ordered, adjudged and decreed by the Court that the Complainant shall have the care, custody and control of the children born to the parties, whose names and respective ages are as follows: Lemoine Williams, twenty years of age; Wincen Williams, seventeen years of age; Edgar Williams, fifteen years of age; and Sewell Williams, eleven years of age. The said respondent shall have the right to see the said children at any reasonable time of day, but the complainant shall have the right to reside with the said minors in the City of New Orleans, Louisiana in her exclusive discretion.

"It is further ordered that of the lands owned by the wife in Mobile County, Alabama, the said husband shall have

334 :

the privilege of using the property located in Sections 7, 8, 9, and 18 all in Township 7 South, Range 3 West, in Mobile County, Alabama, provided however, that the said use of the husband is permissive at the option of the wife and is subject to termination by her at will. In the event that the said husband shall use the said property for pasturage, he shall pay all State and County ad valorem taxes during the time that he occupies the same. In the event the said husband shall occupy the said property during the period of the year when the pecan crop is ready for gathering, the wife shall permit him to gather or to have gathered the pecan crop yielded by the pecan orchard on said property, and shall pay to him for his services and efforts fifty (50%) percent of the income derived from the sale of said pecan crop. The. occupancy of said property by the said husband shall confer no rights upon him with respect to the timber, and he shall not cut or permit any of the timber on the said property to be cut.

"It is further ordered that the said husband and wife shall each have a fifty (50%) percent interest in the herd of cattle which is presently located on the said property, provided however, that for and in consideration of the sum of one ($1.00) dollar and the use of the lands of the wife for pasturage of all of the said herd of cattle, the said husband does hereby agree to make a last will and testament under the terms of which his interest in the herd of cattle shall be bequeathed on his death to his four children, named hereinabove, if any of said herd of cattle be unsold at the time of the death of the husband. No sale of the cattle shall be made without the mutual consent of said husband and wife, and a full accounting shall be made to the wife in connection with any transaction relating to the herd of cattle.

"It is further ordered that complainant pay the costs of this suit, for which execution may issue.

"In term time, Feb'y. 14, 1944.

"Sgd. Claude A. Grayson, Judge."

Immediately after the above decree was rendered, the husband went away for seven weeks, then returned and proceeded to manage the property under the permissive provisions of the decree, living in a house on one of the farms while the wife lived in the home in Grand Bay.

Five months after the decree, the parties, on July 18, 1944, were remarried in Jackson, Mississippi. But the second marriage was not a success. The joint bank account, which was opened after the remarriage, was closed in 1947. The husband kept no records of his business transactions and did not make accountings satisfactory to the wife. In May, 1949, she made written demand through an attorney for an accounting, because, as she averred, he was selling cattle without her consent and was withholding from her, her share of the proceeds of sale of the pecans. This further strained relations between them to such an extent that they separated in August, 1949, and she filed her original bill on August 25, 1949. In the absence of the wife, the husband moved back into the family home at Grand Bay in October, 1949, which caused a bitter altercation with the wife. Since then, the parties have not lived together and have engaged in the various steps leading to the threshold of this decision.

The trial court ordered the Register to hold a reference to ascertain and report the indebtedness of the husband to the wife, resulting from the sale of cattle and pecans, the sale or removal of timber from the lands of complainant, and also the value of a certain truck which the husband was. alleged to have taken from the wife.

By agreement of counsel, a special master held hearings at divers times during the months of April, May and October, 1950, at which testimony of the husband and wife, on direct and cross-examination, was. taken until counsel for both sides were fully satisfied. The master made his report that available records were so incomplete and inaccurate that even an approximately

correct statement of account between the parties was impossible. He did report the numbers, kinds and values of cattle on hand.

Whereupon, the Chancellor heard further testimony ore tenus and made a decree which found in substance:

1. The decree of February 14, 1944, was full, final and complete and the determination thereby of property rights in existing property was not a provision for future maintenance for the wife and her children.

2. The contract filed in that cause was not conditioned on the future maintenance of the wife and children.

3. The interests of the husband and wife in the land and cattle, was not altered by the remarriage of the parties, but the husband had given his full time to the management and should be compensated.

4. The records kept by the husband and wife were inadequate to support an accounting between them.

5. There was no understanding between the husband and wife whereby the wife was to hold title to the real estate for the benefit of the husband, no trust exists in said lands for the benefit of the husband, and the wife is the owner of the lands free from liens, title or interest in favor of the husband.

6. The wife did willfully abandon the husband and continue such for the period and in the manner provided in the statute as grounds for divorce.

The decree afforded the following relief:

1. Ordered the cattle partitioned in kind between the husband and wife, one-half to each, and appointed a commissioner to allot them to each according to value.

2. Decreed a divorce on complaint of husband.

3. Decreed that wife have possession of the lands free from any lease, trust, claim or lien.

The two provisions of the trial court's decree, which the husband complains of here, are first, that he was denied any interest in the lands, and second, that he was denied full title to the herd of cattle and was given only half of them.

Appellant is the husband. He has the trucks, tractors, and farm machinery without argument. He has one-half of the cattle by the terms of the decree, and he has his divorce. In addition, he sought the other one-half of the cattle and an undivided one-half interest in about 600 acres of the lands and the home in Grand Bay. These were denied him in the decree of 1944, and from that decree he has not sought redress by appeal, bill of review or otherwise.

But he raises the point that his remarriage to appellee after the 1944 decree, abrogated the contracts and the decree which related to them, and reinstated the parties, so far as the property is concerned, to the same position they occupied before the first contract was executed, and further avers that his ownership of the property at that time was as stated above.

This brings two questions for our consideration. Did the remarriage have the effect of nullifying and abrogating the provisions of the contracts and the decree, and was he, immediately prior thereto, the sole owner of the cattle and part owner of the home and 600 acres of the lands?

Authorities on the general law dealing with separation agreements and the effect of reconciliation of the parties, are collected in the Annotations to Garrett v. Kirtley, 97 W.Va. 484, 125 S.E. 347, 40 A.L.R. 1222–1241, and Hagerty v. Union Guardian Trust Co., 258 Mich. 133, 242 N.W. 211, 85 A.L.R. 417–424.

The general rule as stated by the annotator in 40 A.L.R. 1227, is where husband and wife have made a separation agreement and thereafter become reconciled and resume cohabitation, it is said generally that the effect is to annul the agreement. Limitations of the rule are stated by the annotator on page 1231 of 40 A.L.R., as:

"The general rule as heretofore stated, while laid down generally in many

cases, is, by most of the decisions which have considered it in that aspect, limited to such separation agreements as provide merely for living separately and for the payment of a stated sum for separate maintenance. As to other provisions, it is said that whether a reconciliation operates to annul the agreement depends on the intention of the parties as shown by their acts."

The foregoing is also stated in substantially the same language in 17 Am.Jur. § 735, pp. 551-2, and 42 C.J.S., Husband and Wife, § 601, p. 185 et seq.

Helpful quotations from cases annotated in 85 A.L.R. 422-423, are:

"While subsequent cohabitation of the parties is evidence of an intention to abandon the agreement, it is not subsequent cohabitation alone which avoids such agreements, but the intentional renunciation of them, which the resumption of marital relations sometimes evidences. So far as subsequent cohabitation established such an intention, and so far only, does it have the effect of avoiding the contract. Whether it does so properly is a matter of intention to be ascertained from the conduct and circumstances as a question of fact. [In] re Ray's [Estate] (1931) 304 Pa. 421, 156 A. 64, 79 A.L.R. 772.

" * * * * * *

"In Hewett v. Gott (1931) 132 Kan. 168, 294 P. 897, it was said in the syllabus by the court: 'Where a husband and wife enter into a postnuptial agreement, which is by its terms plainly in contemplation of separation and a complete disposition of property, which is consummated by the concurrent execution and delivery of deeds in accordance with the terms and provisions of the contract, and the wife dies shortly thereafter, and the husband alleges a reconciliation and an abrogation of the contract, the determination of such issue between him and her heirs must be reached by a consideration of the provisions of the contract, the conduct of the parties, and all the circumstances showing the intention of the parties to treat the agreement as remaining in force or no longer in force, and in this case, upon the consideration of such evidence pro and con, it is held that there was sufficient evidence to sustain the finding of the trial court that the agreement was in full force and effect at the time of the death of the wife.' That case followed Dennis v. Perkins (1913) 88 Kan. 428, 129 P. 165, 43 L.R.A., (N.S.), 1219, discussed in the original annotation.

"Also, in Ross v. Ross (1918) 103 Kan. 232, 173 P. 291, the court recognized the rule that mere resumption of cohabitation does not itself work abrogation, but that it, with other facts and circumstances, may indicate the intention of the parties as to whether a separate agreement is to be set aside."

■ It is to be noted that these cases annotated, deal largely with separation agreements and reconciliation without any intervening decree of divorce. As for cases in which alimony has been ordered paid by the court, under a decree of separation, the rule is stated by the annotator in 40 A.L.R. 1239, as follows:

"It is generally held that a decree for alimony or support money in an action wherein no absolute divorce is sought or granted is not annulled either permanently or temporarily by the reconciliation or renewed cohabitation of the parties, or by the act of one of them in condoning the misconduct of the other, but that these circumstances, like any other change in the situation of the parties, simply afford ground for new action of the court by annulling, reversing, or altering its former order, as justice may require. Wade v. Wade (1892) 3 Cal.Unrep. 576, 31 P. 258; Albee v. Wyman (1857) 10 Gray, (Mass.), 222; McIlroy v. McIlroy (1911) 208 Mass. 458, 94 N.E. 696, Ann.Cas.1912A, 934; Jones v. Jones (1894) [N.J.Ch.], 29 A. 502; Lamsback v. Lamsback (1908) [N.J. Ch.], 71 A. 387; Jones v. Jones (1895)

90 Hun 414, 35 N.Y.S. 877; Hobby v. Hobby (1896) 5 App.Div. 496, 39 N.Y.S. 36."

Our own holdings which are related to the instant case are:

"It is now firmly established in this jurisdiction that where a decree for permanent alimony is not for a lump sum, or otherwise indicative of a division of property merely, but a monthly allowance for the wife's maintenance, running into the indefinite future, and payable if need be from the future earnings of the husband, the court has power to modify the same because of changed conditions of the parties, whether such power be expressly reserved or not. Sullivan v. Sullivan, 215 Ala. 627, 111 So. 911, overruled in Gabbert v. Gabbert, 217 Ala. 599, 117 So. 214, but reaffirmed in Epps v. Epps, 218 Ala. 667, 120 So. 150; Aiken v. Aiken, 221 Ala. 67, 127 So. 819; Ex parte Allen, 221 Ala. 393, 128 So. 801; Worthington v. Worthington, 224 Ala. 237, 139 So. 334; Littleton et al. v. Littleton, 224 Ala. 103, 139 So. 335; Adams v. Adams, 229 Ala. 588, 159 So. 80; Wells v. Wells, 230 Ala. 430, 161 So. 794; Roubicek v. Roubicek, 246 Ala. 442, 21 So.2d 244; Garlington v. Garlington, 246 Ala. 665, 22 So.2d 89.

"It is equally well settled that an agreement of the parties fixing the amount of such alimony becomes merged into the decree, and thereby loses the contractual nature at least to the extent that the court has the power to modify the decree when changed conditions so justify. Morgan v. Morgan, 211 Ala. 7, 99 So. 185; Sullivan v. Sullivan, 215 Ala. 627, 111 So. 911; Worthington v. Worthington, supra; Adams v. Adams, supra; Garlington v. Garlington, supra. * * *" Colton v. Colton, 252 Ala. 442, 443, 444, 41 So.2d 398.

In dealing with the question of property settlements between husband and wife upon separation, this court in Rash v. Bogart, 226 Ala. 284, 287, 146 So. 814, 816, speaking through Bouldin, J., had this to say:

"After separation, equity does not look with disfavor on a friendly adjustment of property rights out of court. This involves the care and maintenance of the wife while they both shall live, and in the same connection, if desired, a division of property, an allowance to the wife in lieu of all property rights growing out of the marital relation. Such a contract, supported by a valuable consideration, is sustained in equity as other contracts, subject to annulment or cancellation for fraud, concealment, or other inequity. Bulke v. Bulke, 173 Ala. 138, 55 So. 490; Sullivan v. Sullivan, 215 Ala. 627, 630, 111 So. 911; Merchants' Nat. Bank of Mobile v. Hubbard, 220 Ala. 372, 125 So. 335; * * *.

"Such settlements are often found in connection with divorce proceedings. Where divorce follows, necessarily dower, homestead, personalty exemptions, distributive share in the husband's estate are all cut off by the severance of the marriage bonds. Any modification thereafter rests upon the power of the equity court to modify its decree touching alimony and allowances.

"*But such adjustments of property rights do not depend upon divorce proceedings.* Neither party may have a lawful ground of divorce." [Emphasis supplied.]

■ The trial court, in making its decree, is not controlled by the agreement of the parties. He may adopt or reject such parts of it as seem proper from the situation of the parties as shown by the evidence on the trial. Russell v. Russell, 247 Ala. 284, 286, 24 So.2d 124.

■ Where the judgment is for a fixed sum to be liquidated at definite times, it becomes a vested right and where no reservation is made in the decree it cannot be modified. Smith v. Rogers, 215 Ala. 581, 112 So. 190; Epps v. Epps, 218 Ala. 667, 120

So. 150; Smith v. Smith, 45 Ala. 264; Jeter v. Jeter, 36 Ala. 391; Ex parte Kay, 215 Ala. 569, 112 So. 147; Barnett v. Barnett, 238 Ala. 678, 680, 193 So. 171.

This principle is so well stated in Smith v. Rogers, supra, and quoted with approval in Epps v. Epps, supra, that we feel constrained to quote here verbatim an appropriate part:

"But, on principle, there is no escape from the conclusion that a decree for alimony in gross, if without reservation, becomes a vested right from the date of its rendition and survives the death of the husband. Differing from a mere periodic allowance for current and continuous support, it is intended to effect a final termination of the property rights and relations of the parties, and is an approximate appraisal of the present value of the wife's future support, and, in a measure, a compensation for her loss of inchoate property rights in her husband's homestead and other estate, given to her by statute in case of her survival. Smith v. Smith, 45 Ala. 264, 268; Jeter v. Jeter, 36 Ala. 391, 401, 402; Winslow v. Winslow, 133 Tenn. 663, 182 S.W. 241, Ann.Cas.1917A, 245; Martin v. Martin, 195 Ill.App. 32; 19 Corp.Jur. 266, § 613." [215 Ala. 581, 112 So. 192.]

In the case at bar the trial court was not faced with a simple situation of an agreement by a husband and wife whereby as a mere incident to a previous separation and divorce, the dependent wife had accepted certain property of the husband for the separate maintenance of herself and the children. Title to the real estate already was in the name of the wife, and had been since before the decree in 1944. The husband claimed part ownership in some of the lands by resulting trust because he claimed to have paid part of the purchase price, and he claimed to have had such understanding with the wife. He claimed part ownership in the 240 acre tract in section 19 because he claimed that he transferred his interest in it to the wife as an incident to the 1944 divorce under an agreement or contract which he claims was abrogated by the remarriage of the parties. The 240 acres consisted of the first tract of 80 acres bought by the Williams family in Alabama. It is undisputed that the down payment was made with proceeds of sale of a house in Pascagoula, Mississippi, which had been bought with money of the wife. The other 160 acres in section 19 was bought subsequent to the time the wife's father began assisting them. In brief of appellee, it is stated that all other lands were bought in the wife's name, which we accept as correct under our Rules. Whether the lands were paid for with income from farming earned by the husband's efforts, or with income from the wife's separate estate was a disputed question.

Likewise, title to the cattle was disputed. The decree of 1944, fixed title in the husband and wife jointly. The husband claimed that he was sole owner of them before the 1944 divorce decree, and that the vesting of title to one-half interest in them by that decree was but an incident to the divorce decree and a part of the provision for future separate maintenance of the wife and children in the agreements and decree, and further that this was abrogated by the remarriage. The cattle herd in 1951, at the rendition of the decree appealed from, was the same herd referred to in the 1944 decree, though additions thereto had been made by purchases, and sales had, from time to time, diminished it. The bill of sale for 100 head, bought in 1945 from Dr. C. H. Ross, was made to both the husband and wife.

Counsel for the husband cite the case of Bulke v. Bulke, 173 Ala. 138, 55 So. 490, as supporting appellant's contention that remarriage of the parties necessarily abrogates the contract executed by husband and wife in anticipation of a divorce. We do not so construe the reasoning in that case. The point decided there, was that temporary alimony and attorneys' fees were not properly decreed to be paid by the husband in divorce proceedings where the husband had previously made a contract with the wife by which he had paid her a sum of money in satisfaction and payment of all

claims against him of every kind for alimony, support and maintenance, and she, in turn, released all interest, right and title in all property of the husband (no question of overreaching was involved). The facts in that case were that the wife left the husband and instituted suit for divorce, whereupon the above mentioned contract was made. The divorce proceeding was later abandoned, and no divorce was obtained. Several years later, the husband "received her and her daughter back into his home, and supported and maintained them, as best he could, till March, 1909, when they voluntarily left him and have ever since remained away." It was contended by the wife that by the husband's receiving the wife back into his home, all former causes of divorce were condoned, and with the condonation went the agreement. The court, after calling attention to the fact that this receiving the wife back into his home was not the equivalent of living with her as his wife, said: "Of course, if he did receive and live with her, by cohabitation, as a wife, it would be a condonation of those causes of divorce; but that would not necessarily abrogate the contract by which she had received a definite amount in lieu of all obligation to support her." This latter statement was beyond the question decided in the case and therefore dictum, but it showed the court's thinking on the subject.

■ Appellant's claim to one-half interest in the home and 600 acres of land, is based upon the theory that he paid all the cost of 600 acres and one-half of the cost of purchase and development of the home property. As between strangers, it is well understood that a " 'resulting trust arises by operation of law, in favor of him who advances the purchase money for land, although the title be taken in the name of another; and when two or more persons together advance the price, and the title is taken in the name of the one of them, a trust will result in favor of the other, with respect to a share of the property, in proportion to the consideration advanced or paid by him.' " Young v. Greer, 250 Ala. 641, 35 So.2d 619, 620; Sanders v. Steele, 124 Ala. 415, 26 So. 882.

■ But as between husband and wife when land is purchased with money furnished by the husband and title is placed in the name of the wife, no trust results in favor of the husband, but a gift to the wife is presumed to have been made. Roubicek v. Roubicek, 246 Ala. 442, 21 So.2d 244; Marshall v. Marshall, 243 Ala. 169, 8 So.2d 843.

We do not hold that such presumption is conclusive and may not in any case be rebutted. Roubicek v. Roubicek, supra.

There is at least one great distinction between the present case and the case of Roubicek v. Roubicek, supra, relied upon by appellant as a case where the presumption of gift following vesting of title to husband's property in the wife was rebutted. In that case the business assets were beyond question the product of the husband's efforts, and this court did not follow the presumption of gift, although the wife had been designated as owner of the business in the husband's absence in the armed forces. But even there, the real estate—the family home—was held to be the exclusive property of the wife by gift, although it was admitted that the husband paid for it. In the instant case, one of the prime questions of fact before the trial court was, whose money paid for the property?

■ The trial court heard a substantial portion of the testimony ore tenus. He is the same trial judge who rendered the former decree between these same parties involving substantially the same property in 1944. No appeal was taken from that decree, although it did not incorporate in its terms all of the provisions of the two contracts. The oral testimony in the case before us was highly conflicting; the record evidence was fragmentary, insufficient and inconclusive. We feel that the finding of the trial court should be accorded great weight, and we do not find the evidence for appellant to be sufficiently cogent and weighty to justify reversal of his decree. Alabama Digest, Appeal & Error, ☞931.

The husband, if dissatisfied with the decree of 1944, should have sought redress

by appeal or other appropriate remedy within the time allowed by the statute. Tit. 7, §§ 788 and 789, Code of 1940; Equity Rules 65 and 66, Appendix, Tit. 7, Code of 1940.

The case is due to be, and is, affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.