**Margaret F. MOORE**
**vs.**
**John L. MOORE**

**No. 279**

District Court Department
Appellate Division, Southern Disrict
Trial Court of the
Commonwealth of Massachusetts

**March 9, 1982**

413

Maurice Golden, Esq., counsel for plaintiff.
David Woods, Esq., counsel for defendant.

## DECISION AND ORDER

This cause came on to and was heard in the Appellate Division for the Southern District sitting at Orleans upon Report from the District Court Department, Orleans Division and it is found and decided that there was no prejudicial error.

It is hereby ,

ORDERED: That the Clerk of the District Court Department, Orleans Division make the following entry in said case on the docket of said Court, namely: REPORT DISMISSED.

Opinion filed herewith.

Patricia D. Minotti, Clerk
Daniel H. Rider, Presiding Justice
Charles E. Black, Justice

## OPINION

Black, J. This is an action of contract brought by the plaintiff, Margaret F. Moore, on March 21, 1980, against the defendant, John L. Moore, seeking to recover monies allegedly due under a separation agreement entered into by the parties. Count I of the complaint asserts that on or about December 3, 1974, the plaintiff and the defendant entered into a written agreement by deliberate, affirmative action which was physically signed in Barnstable County, Commonwealth of Massachusetts, and that pursuant to the provisions of Article I, paragraph B, thereof the defendant agreed to pay the sum of $650.00 per month until such time as the plaintiff remarried or died, subject, however, to a yearly cost-of-living increase in addition to the said monthly payment. Under the terms of Article III, paragraph E, of the agreement, the agreement was to "be incorporated in the decree nisi of the divorce action then pending in the the Barnstable County Probate Court and shall not be merged in any such decree, but shall survive and be forever binding and conclusive on the wife and the husband and their respective heirs, successors and assigns." (Emphasis added.) The complaint further specifies that the subject agreement was a tailor-made, bargained agreement, negotiated at arm's length by independent counsel representing each of the parties so as to be fair and reasonable, that its terms are clear and unambiguous, that the plaintiff has not remarried, that there are no intervening circumstances, and that the defendant has breached the agreement, after having ratified and fully performed its terms for a long time, by unilaterally reducing the monthly alimony from $650.00 per month to $450.00 per month, by failing to pay the cost-of-living increases, and by failing to pay child support in accordance with Article II, paragraph B, of the agreement. Count I sought $4,921.70 in back alimony, $3,499.05 in back child support, $305.00 in unreimbursed medical expenses, and $6,725.39 in damages, plus interest and costs. Count II reasserted the same facts and prayed for damages totaling $8,725.39 in accordance with an account annexed reflecting amounts alleged to be due under the aforesaid agreement for the years 1975 through 1979.

The return of service indicates that on March 28, 1980 the plaintiff's attorney caused a copy of the summons and complaint to be mailed by certified mail, return receipt requested, to the defendant's last and usual place of abode in Sarasota, Florida, in accordance with G.L.c. 223A, § 6, and Mass. R. Civ. P. 4(e), and that the said mail was delivered to and signed for by the defendant on April 1, 1980. A return receipt purportedly signed by one John L. Moore is included in the case file. On May 7, 1980, a default was entered by the Clerk-Magistrate under Dist./Mun. Cts. R. Civ. P. 55(a), by virtue of the failure of the defendant to plead or otherwise defend.

Thereafter, on May 29, 1980, the defendant, by special appearance, moved to remove the default. On May 30, 1980, the defendant filed a document entitled "Notice of Special Appearance" in which he requested that his appearance be noted for the purpose of contesting jurisdiction. On the same date, the defendant filed a motion to remove the default, stating that the defendant had received only a copy of the complaint, but not the summons. On June 16, 1980, the matter was heard in the Orleans Division before Whitman, J., who ordered the motion to remove the default allowed, provided that the defendant file a general appearance in the action and a bond in the sum of $9,500.00. Instead of complying with this order, the defendant, still appearing specially, on June 24, 1980, filed a motion to dismiss under Dist./Mun. Cts. R. Civ. P. 12(b)(1), alleging that the court lacked subject matter jurisdiction. In particular, the motion stated that the separation agreement declared upon had been "merged" into the final decree of the Probate Court and thus did not survive as an independent agreement. A copy of the Probate Decree in question was introduced without objection. The decree specified that the stipulation by and between parties was "...incorporated and merged into the Probate Decree and shall not survive as an independent agreement." This was the only grounds asserted as a basis for the motion to dismiss..

On July 18, 1980, the defendant's motion to dismiss was denied. A memorandum of the court was attached to the order denying the motion in which Welsh, J., noted that there had been a prior motion to remove the default before Whitman, J., which had been provisionally allowed, but that the defendant had not complied with the order, but rather had filed a motion to dismiss under Dist./Mun. Cts. R. Civ. P. 12(b)(1), based upon lack of subject matter jurisdiction. Therefore, Welsh, J., ruled that any defenses or objections available to the defendant at the time of making this motion which might have been asserted under Rule 12 were deemed waived, with the exception of matters described in Rule 12(h)(2). The court further concluded that the agreement in question continued to have independent legal significance, notwithstanding the Probate Decree, and that the agreement could be the subject of an action at law in the District Court Department for its enforcement as a contract. The defendant filed a draft report on July 28, 1980. The draft report was dismissed on July 30, 1980. On September 4, 1980, judgment was entered for the plaintiff under Dist./Mun. Cts. R. Civ. P. 55(b)(1), and notice thereof sent to the parties. The defendant's draft report was duly filed on September 11, 1980. A hearing thereon was held September 23, 1980. Following various revisions the report was allowed September 26, 1980.

In this appeal the defendant claims to be aggrieved by the court's conditioning the removal of $9,500.00, and by the denial of his motion to dismiss based on the court's decision that the agreement in question continues to have independent legal significance so as to support an action at law in the District Court Department for its enforcement as a contract. As far as the defendant's contention that he was aggrieved by the conditioning of the removal of the default upon the filing of a general appearance and a cash bond in the amount of $9,500.00 is concerned, the record shows that the defendant failed to request a report under Rule 64(d) of the Dist./Mun. Cts. Civ. P. with respect to the court's provisional allowance of his motion to remove default and that the grounds therefor were not restated in his motion to dismiss. Accordingly, we agree with the trial court that any defenses or objections available to the defendant at the time of the making of the motion to dismiss which might have been asserted under Rule 12 of the Dist./Mun. Cts. R. Civ. P. were waived unless raised, with the exception of matters described in Rule 12(h)(2). Therefore, the sole matter raised by this appeal is whether there is subject matter jurisdiction to support the cause of action brought by the plaintiff.

In other states, voluntary agreements between husband and wife when the marital union is breaking up are generally looked upon with approval by the courts, and it has been said that they are highly favored in the law. For example, in **Walters v. Walters,** 409 Ill. 298, 99 N.E.2d 342 (1951), the Court noted that parties to a divorce action are to be commended for attempting to settle their interests amicably, since "this not only saves the courts from being fraught with detail, and the necessity of repeated, recurrent hearings, but leads to better feeling and peace of mind among the litigants." Consequently, the case holds that judicial review of separation agreements should be exercised circumspectly, sparingly, and with a persistent view to encouragement of the parties settling their own differences in connection with negotiation of property settlement provisions. Furthermore, where there has been a full disclosure between the parties, not only of all relevant facts, but also of their contextual significance, and there has been an absence of inequitable conduct or other infirmity which might vitiate execution of the agreement, courts should not intrude so as to redesign the bargain arrived at by the parties on the ground that judicial wisdom in retrospect would view one or more of the specific provisions as improvident or one-sided (**Christian v. Christian,** 42 N.Y.2d 63, 365 N.E.2d 849 [1977]). Likewise, many courts hold that support provisions contained in a separation agreement should not be disturbed unless there is a showing of fraud or that the agreement was not fair and equitable when made, or unless there has been an unanticipated and unreasonable change of circumstances (**Bender v. Bender,** 405 N.Y.S.2d 188 [Fam. Ct. 1978]). In fact, there is substantial authority for the view that a valid contract of support of the wife is binding on the divorce court and that the divorce court does not have the power to modify it or to award more or less than was agreed upon (see, **Underwood v. Underwood,** 64 So.2d 281 [Fla. 1953]; **North v. North,** 339 Mo.1226, 100 S.W.2d 582 [1936]; **Galusha v. Galusha,** 116 N.Y. 635, 22 N.E. 1114 [1889]; **Archbell v. Archbell,** 158 N.C. 408, 74 S.E. 327 [1912]; **Swanson v. Swanson,** 48 Ohio App. 2d 85, 355 N.E.2d 894 [1976]; **Lyall v. Lyall,** 240 Pa. Super. 649, 361 A.2d 367 [1976]; **Rhinehart v. Rhinehart,** 52 Wyo. 363, 75 P.2d 390 [1938]). The courts are not, however, unanimous in this view (see, **Williams v. Williams,** 261 Ala. 328, 74 So.2d 582 [1954]; **Bamesberger v. Bamesberger,** 238 Iowa 492, 28 N.W.2d 28 [1947]; **Knabe v. Knabe,** 176 Md. 606, 6 A.2d 366 [1939]; **Ballin v. Ballin,** 78 Nev. 224, 371 P.2d 32 [1962]; **Brown v. Brown,** 198 Tenn. 600, 281 S.W.2d 492 [1955]; see also, 61 ALR 3d 520 and 24 Am. Jur.2d Divorce and Separation s. 906).

A review of Massachusetts case authorities discloses that the Probate Courts clearly have the authority and duty to review separation agreements in light of the statutory criteria and that while the judge is not bound by the agreement, he should uphold it if it is "fair and reasonable" in the circumstances (**Knox v. Remick,** 371 Mass. 433 [1976]; **Brady v. Brady,** Mass. Adv. Sh. [1980] 1053 at 1061). Furthermore, whether such agreements survive the divorce decree is a question of the intent of the parties which is to be ascertained by reading the entire agreement (**Fabrizio v. Fabrizio,** 316 Mass. 343 [1944]; **Hills v. Shearer,** 355 Mass. 405 [1969]; **Surabian v. Surabian,** 362 Mass. 342 [1972]). Where the separation agreement exists independently of the divorce decree, it may be enforced in a contract action (**Gerrig v. Sneirson,** 344 Mass. 518 [1962]; **Surabian v. Surabian, supra**).

In this case, the agreement expressly provided that notwithstanding its incorporation into the divorce decree it should not be merged into the decree, but should survive and be "forever binding and conclusive" upon the parties, their heirs, successors and assigns. Clearly, then, the parties intended the agreement to survive the final divorce decree. While the husband and wife cannot by contract deprive the Probate Court of the power

to consider their relation in connection with their contract and all other facts material to the issues properly before it, in the absence of fraud, inequitable conduct, or other infirmity, the better rule would seem to be that the separation agreement should not be disturbed and that it should survive the divorce decree as a independently enforceable contract (**Brady v. Brady, supra**). Since the separation agreement in this case was incorporated into the divorce decree without modification, we would conclude that the Probate Court found no infirmity or fundamental unfairness concerning any of its provisions. Under these circumstances, we hold that the separation agreement survived the divorce decree as a separate and independently enforceable contract notwithstanding the fact that the divorce decree expressly states that the agreement is incorporated and merged into the probate decree and that it shall not survive as an independent agreement.

Therefore, we find no error in the denial of the defendant's motion to dismiss. The report is dismissed.

So Ordered

**Daniel H. Rider, Presiding Justice**
**Charles E. Black, Justice**

STAFF, J. (Dissenting) Although I agree with much of my brother's scholarly Opinion, I respectfully dissent on a point which ultimately causes me to come to a contrary conclusion.

The point is the effect to be given to language of the Probate Court decree which stated that the "said stipulation is to be incorporated and merged into the Probate decree and shall not survive as a separate agreement."

The majority Opinion points out that judicial review of separation agreements should be exercised in a manner so as to give effect wherever possible to a separation agreement entered into between the parties where there is full disclosure, an absence of inequitable conduct, and the agreement seems to protect the interest

in which the state is concerned. **Knox v. Remick,** 371 Mass. 433 (1976).

The Probate Court judge in this case approved the agreement to the extent that it incorporated its terms in the decree but then took a step beyond that and merged the agreement into the decree.

When used in this sense, the word "merged" is one of legal art and is further explained as follows: "If the existence or extent of a contractual duty, either primary or secondary, is in issue in a court having jurisdiction, a final judgment by which that issue is determined extinguishes the duty, whether the duty is confirmed and enforced or is denied and enforcement refused. The issue is described as res judicata and the legal relations of the parties are now determined by the judgment, not by the terms of the antecedent contract and the performances thereunder; the existence and legal operation of which were in issue." Corbin on Contract (1962) Volume six, section 1318. An apposite expression in the vernacular is "You cannot have your cake and eat it too."

At this point we are unaware of any reasons the Probate Court judge had in using the explicit terms that "the [agreement]...is to be...merged into the Probate decree and shall not survive as an independent agreement," but we cannot assume that his language was used without reason. While the parties should be free to enter into whatever bargain they wish as to the division of property, the subject of the payment of support and alimony is clearly a matter of continuing interest to the state. **Surabian v. Surabian,** 362 Mass. 342 (1972).

I see no basis for permitting a collateral attack on the judgment of the Probate Court on the ground that the Court was acting outside its jurisdiction in merging the agreement into the judgment.

The question raised by the motion to dismiss is one of subject matter jurisdiction and may be raised at any stage of the proceedings. **Bergeron v. Bergeron,** 287 Mass. 524, 526 (1934).

For this reason I would reverse the ruling of the trial court and order that the complaint be dismissed. In coming to this conclusion, I have considered the language of General Laws, Chapter 208, Section 1A which deals with "no-fault" divorces and which seems to provide that the separation agreement entered into thereunder is merged into the judgment, but by agreement of the parties may continue in existence as a separate instrument. The apparent anomaly in the conflict of terms may be best dealt with in another case; in the divorce case here the cause of divorce was cruel and abusive treatment.

As to the question of the propriety of the judge's action in provisionally allowing defendant's motion to remove default, it would seem to me that the defendant should not be required to renew his objection to the ruling at the time his motion is filed. Dist./Mun. Cts. R. Civ. P. 12.

Dist./Mun. Cts. R. Civ. P. 64 provides that a request for a report should be filed within ten (10) days after entry of judgment, and it is only as to rulings on the admission or exclusion of evidence that a written request for a report must be made within five days after the hearing of the evidence. The defendant in fact is not entitled to request a report on the interlocutory ruling on the motion to remove default until final judgment is entered. **Pollack v. Kelly,** 372 Mass. 469 (1977).

**Richard O. Staff, Justice**

This certifies that this is the opinion of the Appellate Division in this cause.

**Patricia D. Minotti, Clerk**