OPINION OF THE COURT
Joseph D. Quinn, Jr., J.
In the context of this pending action for divorce, wherein defendant husband has interposed an answer which asserts counterclaims in which he seeks to impress constructive trusts upon certain parcels of improved real property now or formerly owned of record by plaintiff wife, or upon the proceeds of the sale of some of such property, defendant moves for leave to reargue plaintiff’s prior application to sever those counterclaims, with their financial causes of action, from the matrimonial causes of action pleaded in the complaint.
The stated basis upon which reargument is sought is that *372 this court, in granting severance in an order made on January 17, 1980, overlooked the eventuality that, if, in the course of all of this litigation, plaintiff wife first obtains a judgment of divorce, the provisions of section 176 of the Domestic Relations Law may be invoked to bar recovery on the counterclaims. Implicit in that contention, it seems, is the claim that, insofar as it affects this case, section 176 of the Domestic Relations Law authorizes an unconstitutional deprivation of defendant’s property rights without due process of law. At issue is whether that statutory section still has life in it, and, if so, whether it is applicable here.
Since this application presents vexing questions which, in the past, have given rise to a divergence of opinions in the First and Second Departments (Fletcher v Fletcher, 56 AD2d 589 [2d Dept], mot for lv to app dsmd 43 NY2d 746; Di Bella v Di Bella, 61 AD2d 956 [1st Dept], affd 47 NY2d 828), and which in all likelihood, must ultimately be answered by the appellate courts, leave to reargue is granted.
Section 176 of the Domestic Relations Law bears the catch-line "Property rights in action by wife” and provides as follows: "If, in an action for divorce brought by the wife, when final judgment is rendered dissolving the marriage, the plaintiff is the owner of any real property, or has in her possession or under her control any personal property or thing in action which was left with her by the defendant or acquired by her own industry or given to her by bequest or otherwise, or if she is or thereafter may become entitled to any property by the decease of a relative intestate, the defendant shall not have any interest therein, absolute or contingent, before or after her death. Where final judgment in such an action is rendered dissolving the marriage, the plaintiff’s inchoate right of dower in any real property of which the defendant then is or was theretofore seized is not affected by the judgment.”
A part of article 10 of the Domestic Relations Law, which currently regulates the pattern of divorce in this State, section 176 is a divorce-related measure. The Second Department has characterized it as one treating of the common-law estates of curtesy and dower and has found that "it is no longer a viable statute”. (Fletcher v Fletcher, supra, p 590.)
Curtesy is a life estate which the common law gives to a husband upon his wife’s death in the real property of which she dies seized of an estate of inheritance, provided live issue was born of the marriage, and provided that the wife did not *373 make a testamentary disposition or prior conveyance of such property. (14 NY Jur, Decedents’ Estates, § 222, pp 486-487.) Estates by the curtesy in the real property of a wife dying after August 31, 1930, were abolished by statute. (Real Property Law, § 189.)
Dower is the estate or interest which, by marriage, a wife acquires in real property of which her husband was seized of an estate of inheritance at any time during the marriage. It is a right at common law which was recognized and conceded to the widow by the Magna Charta (§§ 7, 11). In 1813, a dower láw was enacted in New York which assigned to a widow for her dower "the third part of all the lands of her husband, which were his at any time during the coverture.” (L 1813, ch 4, p 56.) The substance of that law appears in the Revised Statutes which became effective in 1830 (1 Rev Stat, part II, ch I, tit I, § 1, p 740). The present statute provides that when the parties intermarried prior to September 1, 1930, a widow shall be endowed of the third part of all the lands whereof her husband was, prior to September 1, 1930, seized of an estate of inheritance at any time during the marriage, but except for that, after August 31, 1930, dower was completely abolished as to all of the husband’s lands acquired after that latter date, and it was superseded by statutes prescribing a surviving spouse’s distributive rights and right of election to take against the will of a deceased spouse (Real Property Law, § 190; Decedent Estate Law, §§ 18, 83 [now EPTL 4-1.1, 5-1.1]).
The opinion at the Appellate Division in Di Bella (61 AD2d 956, supra), which defendant cites on the instant motion, makes it plain that the First Department is not in accord with the evaluation of section 176 of the Domestic Relations Law made by the Fletcher court (supra).
If the sense and compass of section 176 are to be grasped, the background and evolution of that enactment must be analyzed in conjunction with that of the allied remedy of divorce in New York.
In England, divorce a vinculo matrimonii was a common-law remedy which avoided the marriage ah initia. This remedy nullified the marriage and placed the parties in the same position to each other as though there had been no marriage. The issue of the marriage were bastardized, and the wife’s right of dower ceased. Such a divorce was not granted for adultery or other causes occurring subsequent to the marriage. For adultery, the common law provided divorce a mensa *374 et thora, which was essentially a separation (Jones v Jones, 90 Hun 414, 417-418; Hofmann v Hofmann, 195 App Div 596, 603) and did not affect the right of dower or curtesy. At common law, the interest of the husband in the real estate of the wife only continued during marriage. Therefore, if a wife was divorced a vinculo, she was entitled to her real property immediately, in the same manner as if she had survived her husband (Renwick v Renwick, 10 Paige Ch 420, 424). A divorce which recognized the validity of a marriage, and avoided it, for causes happening thereafter, was unknown to the common law and is a creature of statute. (Wait v Wait, 4 NY 95, 100.)
The law of England concerning divorce was never adopted in this State. From the time that New York became a province of England until it became a State, the Colonial Legislature never enacted a statute defining the grounds of divorce, nor was there a judicial tribunal with cognizance of matrimonial causes. Indeed, during this period there were but four divorces granted, one in 1670 and three in 1672, and these were granted by a Colonial Governor exercising extraordinary power as a chief Magistrate. For more than 10 years after the colony became a State, there was no law in New York authorizing a divorce upon any ground. On March 30, 1787, the Legislature passed an act entitled "Act directing a mode of trial, and allowing of divorces in cases of adultery” (L 1787 [10th session], ch 69). That act conferred jurisdiction upon the Court of Chancery to grant divorces for adultery. (Burtis v Burtis, 1 Hopk Ch 557, 563-565.)
Although the act permitting divorces in cases of adultery was passed in 1787, it was not until 1813, some 26 years later, that the Legislature made provisions for discharge of a husband’s curtesy rights in a wife’s real estate after divorce for the husband’s adultery, for preservation of a husband’s curtesy rights in a wife’s real estate after divorce for the wife’s adultery, and for forfeiture of the wife’s dower after her conviction for adultery. (L 1813, ch 102, §§ 6, 7, 8.) Sections 6, 7 and 8 of chapter 102 of the Laws of 1813 became part II (ch 8, tit 1, art 3, §§ 46, 47, 48) of the Revised Statutes of 1830 with minor changes in language and no change in substance. (2 Rev Stat [2d ed], vol 2, p 80.)
Section 46 read as follows: "If a wife be the complainant, and a decree dissolving the marriage be pronounced, and she shall, at the time of pronouncing such decree, be the owner of any real estate, or have in her possession any goods, or things *375 in action, which were left with her by her husband, acquired by her own industry, given to her by devise or otherwise, or to which she may be entitled by the decease of any relative intestate, all such real estate, goods or things in action, shall be her sole and absolute property.”
Section 47 read as follows: "If a husband be complainant, and a decree dissolving the marriage be pronounced, the right of the complainant to any real estate owned by the defendant at the time of pronouncing the decree, in her own right, and to the rents and profits thereof, shall not be taken away or impaired, by such dissolution of the marriage, and he shall also be entitled to such personal estate and things in action, as may belong to the defendant, or be in her possession at the time such decree shall be pronounced, in like manner as though the marriage had continued.”
Section 48 read as follows: "A wife being a defendant, in a suit for divorce brought by her husband, and convicted of adultery, shall not be entitled to dower in her husband’s real estate, or any part thereof, nor to any distributive share in his personal estate.”
In 1843, the Court of Appeals, in construing section 46, stated that the evident intent of the Legislature in enacting the section "[w]as, not only to give to her [the wife] such real estate discharged of the husband’s life interest therein, as tenant by the curtesy initiate, and her bedding, & c. left with her by the husband, but also all such choses in action, legacies and distributive rights, not collected or reduced to possession by the husband, as would have belonged to her by survivor-ship if the marriage had been dissolved by his death at the time of making the decree.” (Renwick v Renwick, 10 Paige Ch 420, 425-426, supra; 2 Leg. Obs. 381.)
In 1850, the Court of Appeals determined that a decree of divorce obtained by a wife for the adultery of the husband does not deprive her of the right to dower in his real estate in the event that she survives him. (Wait v Wait, supra, pp 108-109.)
In 1880, the then Code of Civil Procedure, enacted in 1876, was the subject of extensive amendment (L 1880, ch 178). In the process, part II (ch 8, tit 1, art 3, § 46) of the Revised Statutes of 1830 was transferred to the Code of Civil Procedure, and, with little change in language and none in substance, became subdivision 3 of section 1759 of article Second, which governed divorce. A codified version of the decision in *376 Wait (supra) became subdivision 4 of the new section 1759. In the same manner, sections 47 and 48 of the divorce article of the Revised Statutes of 1830 were carried over to section 1760 of the amended Code of Civil Procedure as subdivisions 2 and 3 of that new section.
In 1894, section 1759 of the Code of Civil Procedure was amended with virtually no change in the language of the third and fourth subdivisions thereof. (L 1894, ch 728.) In the following year, 1895, the same inconsequential amendment was made to subdivisions 3 and 4 of section 1759. (L 1895, ch 891.)
In 1896, the substance of subdivision 3 of section 1760 of the Code of Civil Procedure terminating the dower rights of a wife divorced for misconduct, was transferred to the newly enacted Real Property Law as section 176. (L 1896, ch 547.) That section was unaffected by the consolidation of laws in 1909, and its text currently appears in the Real Property Law renumbered as section 196.
With the advent of the Civil Practice Act in 1920, subdivisions 3 and 4 of section 1759 of the Code of Civil Procedure were combined to form section 1156 of the Civil Practice Act and to become a part of article 68 which regulated divorce actions. At the same time, subdivision 2 of section 1760 of the Code of Civil Procedure became section 1158 of the Civil Practice Act. This latter section was repealed, effective September 1, 1930, when estates by the curtesy were abolished. (L 1929, ch 229, § 11.)
In 1962, section 1156 of the Civil Practice Act was repealed by CPLR 10001 and its text was transferred verbatim to the Domestic Relations Law as section 176. (L 1962, ch 313, § 7.)
Read in the light of the foregoing history, this venerable enactment, now identified as section 176 of the Domestic Relations Law, linked as it is with the remedy of divorce and with the consequence of divorce upon the estates of curtesy and dower, has neither vigor nor significance today, save perhaps for those few hardy souls who, having married 50 years ago or more, now find themselves involved in the divorce courts or in contested estate proceedings. Nor may the limited reach of this act be legitimately extended by detaching from its context the clause forfeiting an errant husband’s postdivorce claims to personalty left by him with his wife prior to divorce and by manipulating that clause to bar postjudgment prosecution of a defendant husband’s counter *377 claims for imposition of constructive trusts upon realty acquired by the parties during the marriage or upon the proceeds of sale of that realty. While such a construction of the section is, at first glance, tempting, it ignores legislative purpose as manifested by the record of the past and violates the "whole statute” rule of statutory interpretation. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 97.)
The parties to the controversy at bar were married in New York on March 29, 1969, nearly 40 years after estates by the curtesy were abolished and after dower rights were eliminated as to marriages contracted after August 31, 1930, and as to real estate acquired subsequent to that date. For them, the law under scrutiny is no more than an anachronism, a vestigial remnant of a bygone era.
On reargument, then, the court adheres to its original decision since defendant has failed to demonstrate that any authority or principle of law has been overlooked or that the facts have been misapprehended. (Cf. New York Cent R. R. Co. v Beacon Milling Co., 184 Misc 187, 190-191.)